## THE CORN EXCHANGE BANK *v.* COLER, COMMISSIONER OF PUBLIC WELFARE.

No. 36. Argued November 27, 1929.—Decided January 6, 1930.

See also, 132 Misc. Rep. 449.

*Mr. Spotswood D. Bowers,* with whom *Messrs. Henry M. Carpenter* and *Stewart W. Bowers* were on the brief, for appellant.

*Mr. J. Joseph Lilly,* with whom *Messrs. Arthur J. W. Hilly* and *Martin H. Murphy* were on the brief, for appellee.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Commissioner of Public Welfare complained to the Domestic Relations Court that, while residing with them in New York City, Raffaele De Stefano abandoned his wife and infant child and absconded from the State, leaving them without means and likely, unless relieved, to become public charges. Upon the wife's supporting affidavit two magistrates of the court issued a warrant authorizing seizure of all the absconding husband's right, title and interest in his deposit with appellant Bank and directing return to the County Court. After service and demand the Bank refused to pay. Thereupon, the Commissioner by complaint in the City Court sought to reduce the fund to his possession. The Bank moved for judgment upon the ground that the statute—basis of the warrant—failed to provide for notice, either actual or constructive, to the absconder, and could not be enforced without denying the due process of law guaranteed by both State and Federal constitutions. It prevailed in the City Court. The Appellate Term reversed that action and directed judgment for the Commissioner, and this was approved by the Court of Appeals.

Sections 921, 922, 923, 924, 925, New York Code of Criminal Procedure, under which the original warrant issued, provide in substance:—That the Commissioner of Public Welfare may apply to two magistrates for a warrant to seize the property of an absconding husband or father leaving wife or child likely to become charges on the public; that upon due proof of the facts, the warrant may be issued; that the officer receiving it may seize the

property wherever found within his county; and shall be vested with all the rights and title thereto which the person absconding then had; that return of all proceedings under the warrant shall be made to the next term of the County Court; that thereupon that court, upon inquiring into the circumstances of the case, may confirm or discharge the warrant and seizure; that in the event. of confirmation the court shall from time to time direct what part of the property shall be sold, and how the proceeds shall be applied to the maintenance of spouse or children; and on the other hand that if the party against whom the warrant has issued shall return and support the spouse or children so abandoned, or give satisfactory security for such support, then the warrant shall be discharged, and the property restored.

The Court of Appeals ruled that jurisdiction of the magistrates to issue the warrant and of the County Court to enter a confirmatory judgment depend upon existence of the relation sought to be regulated; that " the victim of the seizure may nullify the whole proceeding, including any adjudication attempted in his absence, if there is lacking the jurisdictional relation which is the basis of his duty." Thus limited, it upheld the enactment as a proper regulation of family relation and affirmed the judgment in the Commissioner's favor for the amount claimed in his complaint.

The challenged procedure is an ancient one. In 1718 the Parliament of England enacted a statute reciting a like ill and prescribing like remedy. The New York Colonial Legislature passed a substantially similar law in 1773; the State Legislature in 1784, and again in 1788. This passed into the Revised Laws of 1813; afterwards, broadened to subject choses in action to seizure, into the Revised Statutes of 1829. Without material change it has continued in effect, and has been enforced unquestioned until the present action.

In *Ownbey* v. *Morgan*, 256 U. S. 94, 112, we upheld
certain rather harsh legislation of the State of Delaware
modeled on the custom of London and dating back to
Colonial days. Its validity, challenged because of alleged
conflict with the due process clause of the Fourteenth
Amendment, was sustained because of the origin and
antiquity of the provisions.

" However desirable it is that the old forms of procedure
be improved with the progress of time, it cannot rightly
be said that the Fourteenth Amendment furnishes a uni-
versal and self-executing remedy. Its function is nega-
tive, not affirmative, and it carries no mandate for particu-
lar measures of reform. For instance, it does not con-
strain the States to accept particular modern doctrines
of equity, or adopt a combined system of law and equity
procedure, or dispense with all necessity for form and
method in pleading, or give untrammelled liberty to make
amendments. Neither does it, as we think, require a State
to relieve the hardship of an ancient and familiar method
of procedure by dispensing with the exaction of special
security from an appearing defendant in foreign attach-
ment."

Following the reasoning of that cause we think the
statute here under consideration cannot be said to offend
the Federal Constitution.

That the appellant Bank under some remote possibility
may be called upon to pay a second time is true; but
when voluntarily contracting with the depositor it knew
this and accepted the consequent responsibility. Under
the approved practice there was abundant opportunity
to make defense—to require proof of all essential facts.
At all events, its position is not materially worse than
that of a debtor who must pay one who holds letters
testamentary issued upon proof of death, though in truth
the creditor may be alive with power to repudiate the
appointment. See *Scott* v. *McNeal,* 154 U. S. 34.

*Judgment affirmed.*