Joseph E. BLOUIN, Jr. and Fred
Griese, Plaintiffs,

v.

Hon. Nanette DEMBITZ et al.,
Defendants.

No. 72 Civ. 4599.

United States District Court,
S. D. New York.

March 30, 1973.

Brashich and Finley by Deyan Ranko Brashich, and Edith Blumberg, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of N. Y. by Robert S. Hammer, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiffs, errant husbands, seek by this action, instituted pursuant to 42 U.S.C. § 1983, to test the constitutionality of New York statutes, and judicial procedures developed thereunder by defendant Family Court Judges of the State of New York, and their clerks and employees.[1]

They seek damages, and preliminary and final injunctive relief against defendants, preventing them from "effecting or causing to be effected the arrest or incarceration of Plaintiffs, compelling Plaintiffs or causing Plaintiffs to be compelled to involuntarily appear before the Family Court . . ., threatening Plaintiffs, or causing Plaintiffs to be threatened with arrest or incarceration, and subjecting Plaintiffs or causing Plaintiffs to be subjected to the deprivation of rights, privileges or immunities secured by the Constitution and laws." (Amended Complaint, ¶ III.)

Plaintiff Blouin is a resident of New Jersey who has permanent employment in New York City. Plaintiff Griese describes himself in his complaint as a citizen of New York who is temporarily residing in New Jersey, but employed in New York City. Blouin's ex wife, and Griese's wife, who seek support money from them through the New York Family Court, are not parties here. They reside, respectively, in Arizona, and in Ontario, Canada.

Hearings were held on November 2, 1972, December 6, 1972 and again on March 2, 1973. The conduct complained of was undertaken by the Family Court in the regular course of its judicial proceedings to adjudicate the support rights of non-resident dependents of plaintiffs, pursuant to the Uniform Support of Dependents Act. [New York Family Court Act, § 411, New York Domestic Relations Law, Article 3–A, McKinney's Consol.Laws, c. 14] Such uniform reciprocal legislation is in effect in New York, Arizona and the province of Ontario, Canada, and permits a destitute dependent in one jurisdiction to apply there for a support order, to be adjudicated and enforced in another reciprocal jurisdiction where the absconding husband or father is found.

The factual situation affecting the two separate plaintiffs differs in no material respect, except that Blouin's former wife initiated her application for support in Arizona. Griese's wife and infant issue are, apparently, sojourning in Canada and have sought the assistance of a competent court in the Province of Ontario.

The New York statute [§ 31(1) Domestic Relations Law] includes any province or territory of Canada as a foreign jurisdiction in which support proceedings may be commenced for adjudication and enforcement by the New York Family Court where respondent is found in New York.

We dispose immediately of plaintiff Griese's suggestion that permitting a Canadian support petition to be the subject of New York proceedings for adjudication of rights under the Uniform Act, violates the constitutional inhibition against a state entering into treaties with a foreign country. (Amended Complaint, ¶ XXXI–XXXII.)

█ Such a statute having reciprocal effect [New York Domestic Relations Law, Article 3–A, and particularly § 31 thereof], which grants to citizens of a foreign jurisdiction the same procedural remedies in New York courts as the foreign state grants to our citizens is not a compact with a foreign country, and does not violate Article II, Section 2(2) of the Constitution, or any treaty or

1. The territorial jurisdiction of defendant Judges is the City of New York. See § 121 et seq., New York Family Court Act and

Dente v. Dente, 4 A.D.2d 1031, 168 N.Y.S.2d 671 (1st Dept. 1957).

other paramount federal law. Clark v. Allen, 331 U.S. 503, 516–517, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947); the statute does not, as applied in this case, disrupt or embarrass our relations with other countries. See Gorun v. Fall, 287 F. Supp. 725, 728 (D.Montana 1968), aff'd. 393 U.S. 398, 89 S.Ct. 678, 21 L.Ed.2d 628 (1968); Zscherning v. Miller, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968).

On the coming in of verified petitions from the Provincial Court, Family Division of the County of Middlesex, Province of Ontario in the case of Griese, and the Maricopa County Supreme Court of Arizona, in the case of Blouin, defendant Family Court Judges and their servants and agents · proceeded in the same manner as that Court does regularly in such cases; a summons was duly issued to each respondent [plaintiffs, here] requiring him to appear personally before the Family Court.

Such summons and the service thereof, is required by § 427, Family Court Act, which reads as follows:

"Service of summons

(a) Service of a summons and petition shall be made by delivery of a true copy thereof to the person summoned at least three days before the time stated therein for appearance. If so requested by the respondent or by a parent or other person legally responsible for his care, the court shall not proceed with the hearing or proceeding earlier · than seven days after such service.

(b) If after reasonable effort, personal service is not made, the court may at any stage in the proceedings make an order providing for substituted service in the manner provided for substituted service in civil process in courts of record.

(c) In a proper case, service of a summons and petition under this section may be effected by mail."

It was conceded at the hearing before me that the Family Court Judges in New York City, burdened as they are by a substantial case load, and limited supporting personnel, have developed the custom or practice of serving *all* such summonses by mail pursuant to § 427(c) of the Act, quoted above. Apparently they make, or have made, a judicial determination that each such case is "a proper case" within the statute. No effort had been made by defendants to effect personal service of these summonses. Each was served by first class mail, directed to plaintiffs' respective places of business or employment.

Each such summons was actually received within sufficient time to permit compliance and give reasonable notice of the pendency of the support proceedings. On advice of counsel, and believing that the practice being followed by the Family Court infringed upon constitutionally protected rights of due process arising under the Fourteenth Amendment, and enforceable here pursuant to 42 U.S.C. § 1983, plaintiffs did not appear or answer in the Family Court.[2] Plaintiffs wish to assert a claim that the Family Court may not exercise jurisdiction over them, constitutionally, under the circumstances, without first effecting personal service of the summons, not by actual delivery by a postal employee, but by traditional process server means.

Thereafter, a defendant Judge of the Family Court issued a separate warrant for the arrest of each plaintiff. The warrants were issued pursuant to § 428(a) of the Family Court Act, which reads in relevant part as follows:

"Issuance of warrant; certificate of warrant

(a) The court may issue a warrant, directing that the respondent be arrested, brought before the court, when a petition is presented to the court un-

---

2. Blouin wrote a letter, asking for a continuance and agreeing to appear at an adjourned, more convenient date. He urges that this was not a waiver, as written prior to retaining counsel, and without knowledge of his rights, and also that it was not a general appearance. We agree.

der section four hundred twenty-three and it appears that

> (i) the summons cannot be served, or
>
> (ii) the respondent has failed to obey the summons; or
>
> (iii) the respondent is likely to leave the jurisdiction; or
>
> (iv) a summons, in the court's opinion, would be ineffectual; . . ."

Issuance of a warrant under § 428(a) of the Act is a judicial act. We must accept the construction placed upon this statute by the New York courts. In Dente v. Dente, 4 A.D.2d 1031, 168 N.Y.S.2d 671 (1st Dept. 1957) issuance of such a warrant for arrest in order to acquire personal jurisdiction of a respondent employed within the City of New York, but residing upstate, was sustained after disregard of a summons served, not only by mail, but by mail addressed to respondent's home outside of the City, and therefore outside of the territorial jurisdiction of the Family Court. The Appellate Division held "the [Family] court was justified in issuing a warrant on this petition, since the summons here was ineffectual (§ 123(d)). But jurisdiction of respondent can be acquired only by service of the warrant within the city."

In Rodoe v. Noneus, 23 A.D.2d 212, 260 N.Y.S.2d 977 (4th Dept. 1965) a different intermediate appellate court in New York criticized the "standard practice to serve the summons and petition by mail" and reversed, where a motion made in Family Court, to vacate service of a warrant, had been denied, and where there was no proof of delivery of the mailed summons. *Rodoe* was a paternity proceeding, in which service of summons is regulated by a statutory provision (§ 525 of the Act), materially different from the one presently before us. Comparison would indicate that the New York legislature made different provisions for service, consciously, with respect to paternity proceedings, compared with support proceedings.

The scope of judicial inquiry here does not extend to determining whether or not it is, or was, an abuse of discretion for defendants to issue warrants pursuant to § 428 of the Family Court Act in these cases, without first making an effort to effect personal service of a summons, within the City of New York. Nor does it extend to a determination as to whether it is unjustified to adopt what is apparently a standard practice, of mailing summonses to those situated as are plaintiffs, and issuing warrants upon their failure to respond to first class mail service. These are questions of state law which do not rise to the level of calling in question a federally protected right. Rather, we are concerned with the extent of the constitutional power of the state, acting through its legislature and judiciary.

A respondent in Family Court against whom a warrant has been executed must be taken to the "most accessible magistrate" for arraignment, who shall "hold such respondent . . . admit to, fix or accept bail, or parole him for hearing before the family court" (§ 155 Family Court Act). Section 155–a of the Act also allows a desk officer at a police station to take cash bail between 2:00 P.M. and 8:00 A.M. The New York Attorney General has given an opinion that a sheriff may not detain a person so arrested in the county jail unless such person is first so arraigned before a magistrate (Op.Atty.Gen. April 11, 1967). The impingement on liberty by the execution of a warrant, pursuant to the foregoing statutory scheme, upon a person who has actually received a summons by first class mail, and ignored it, seems slight.

A support proceeding is quasi-criminal in nature and has always been so considered. James v. James, 178 Misc. 1041, 37 N.Y.S.2d 89 (1941). Notwithstanding characterization by the statute, of the proceedings as "civil", [§ 30 N.Y. Domestic Relations Law] we need not overlook this factor in considering the scope of constitutional power.

Physical power obtained over a defendant by his arrest was the historic basis for jurisdiction over the person at common law. Civil arrest without prior notice, in order to gain jurisdiction over the person of a defendant, remains vestigially in effect in New York pursuant to statute. See §§ 6101 and 6111, CPLR, which permits civil arrest as a discretionary provisional remedy, prior to service of a summons, in certain types of civil actions between private litigants. See also Local Finance Law § 166.00, McKinney's Consol.Laws, c. 33–a, and Village Law § 339, McKinney's Consol.Laws, c. 64. Civil arrest prior to notice to obtain jurisdiction is also permitted in various other quasi-criminal proceedings. See Family Court Act § 526 et seq. (paternity proceedings); Education Law §§ 3213(2)(a), McKinney's Consol.Laws, c. 16, 4111 (truants); General Business Law § 34 (peddlers), McKinney's Consol.Laws, c. 20; Mental Hygiene Law §§ 78(3) (mentally ill), McKinney's Consol.Laws, c. 27, 154(8) (epileptic escaped from Craig Colony).

True it is that the New York legislature and courts, in the more than 140 years since the Stilwell Act[3] abolished imprisonment for debt, and civil arrest in contract actions, have severely limited use of this common law process for initiating ordinary civil litigation, acquiring jurisdiction, and compelling an appearance. However, in 1961, the New York legislature rejected the recommendation of an Advisory Commission to abolish civil arrest, save in case of actual or threatened contempt, and enacted present § 6101. CPLR, (See 1961 Sen. Fin.Comm.Rep. p. 12, et seq.).

We cannot hold their considered judgment violative on its face of these plaintiffs' constitutional rights.

■ Particularly where non-residents, regularly or temporarily within the state are concerned, we see no constitutional due process requirement which would prevent the state from obtaining jurisdiction over the defendant in a civil proceeding for non-support, by arrest in the first instance.

■ Plaintiff Griese claims affirmatively, to be a New York resident. As to a resident, a state may provide constitutionally such form of substituted or constructive service as is reasonably calculated to give the respondent notice of the proceedings. See Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L. Ed.2d 278 (1940). Domicile in the state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted or constructive service, (311 U. S. at 462, 61 S.Ct. 339).

Each of these plaintiffs has received actual notice of the proceedings pending against him, and has had an opportunity to appear in the state court proceedings and be heard. Their complaint is that because they ignore the invitation by mail (summons), actually received by them, the defendant Judges threaten to execute warrants against them, and have them arrested in order to compel their appearance.

■ Under all the circumstances, and in view of the traditional and continuing use in New York of civil arrest as a provisional remedy to gain jurisdiction we do not think the complaint raises a substantial constitutional issue on the facts of this case. Nor does it state a claim upon which relief may be granted.[4]

---

3. L.1831 Ch. 300.

4. We do not suggest that all time honored state practices derived from the common law, and well known to the authors and ratifiers of the Fourteenth Amendment, are now lawful simply because indulged in without objection for almost a century since ratification. The recent judicial extinguishment of the ancient and respected Connecticut practice of summary pre-judicial garnishment indicates otherwise. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

All we say is that limited to the facts of this case, the use by a state court of the provisional remedy of judicially authorized arrest, circumscribed as it is by the New York Family Court Act, does not violate

This is not a case in which a defendant seeks to have service, which conveyed actual notice, set aside because not "reasonably calculated to apprise him of the action". Wuchter v. Pizzuti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928).

■ Further difficulties of a procedural and jurisdictional nature exist. Assuming that either plaintiff states a meritorious case with respect to the constitutionality of the New York State Family Court's practices, this action seems barred by 28 U.S.C. § 2254(b). It is fortuitous merely that neither warrant has been executed. Once the warrants were executed and until admitted to bail, plaintiffs would be in "custody pursuant to the judgment of a state court", as therein defined, and we should not issue a writ of habeas corpus until there has been an exhaustion of state remedies. 28 U.S.C. § 2254(b). United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2 Cir. 1972).

Can we grant litigants against whom warrants are outstanding, but who, fortuitously, have not yet been arrested, greater access to the federal courts to litigate the issues affecting their liberty than we may extend to those who have actually been placed in state custody? The preliminary injunctive relief sought herein is tantamount to the issuance of a writ of habeas corpus, which would have been the only process available to this Court if the Family Court warrant had been executed in accordance with its mandate, and would have been barred by 28 U.S.C. § 2254(b). Surely jurisdiction should not depend upon such fortuitous factors.

These are, as has been noted, prosecution of quasi-criminal cases presently pending in a competent court of the State of New York. They are ordinary matters, which should be litigated fully in that court. The courts of the State of New York can be expected to deal adequately with whatever legal issues may surround the issuance and execution of the warrant, and appropriate relief should be sought first in state court. This is not the "extraordinary case" which would be within our jurisdiction, within the meaning of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

As our Circuit held in Canal Theatres, Inc. v. Murphy, 473 F.2d 4 (1973):

"Under Younger v. Harris, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), federal courts must abstain when state criminal proceedings are pending. Appellant may raise its constitutional objections to the provisions at issue herein as a defense to the criminal prosecution in the state courts. If it is unsuccessful there it can appeal through the New York State courts to the United States Supreme Court.

The Supreme Court in the *Younger* case noted that absent special circumstances the federal courts should abstain from suits such as these when not to do so would constitute interference with state criminal proceedings. The special circumstances under which federal courts may act although state proceedings are pending are not present in the instant case. Those circumstances involve cases where irreparable injury is 'both great and immediate,' 401 U.S. at 46 [91 S.Ct. 746] (quoting Fenner v. Boykin, 271 U.S. 240, 242 [46 S.Ct. 492, 70 L.Ed. 927] (1926) ), where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' 401 U.S. at 53 [91 S.Ct. 746] (quoting Watson v. Buck, 313 U.S. 387, 402 [61 S.Ct. 962, 85 L.Ed. 1416] (1941)), or where there is a showing of 'bad faith, harassment, or . . . other unusual circumstances that would call

---

plaintiffs' right to due process, for "[n]ot lightly vacated is the verdict of quiescent years". Coler v. Corn Exchange Bank, 250 N.Y. 136, 141, 164 N.E. 882, 884, aff'd. sub nom. Corn Exchange Bank v. Coler, 280 U.

S. 218, 50 S.Ct. 94, 74 L.Ed. 378 (1930), quoted with approval by Chief Justice Stone speaking for the Court in Anderson National Bank v. Luckett, 321 U.S. 233, 244, 64 S.Ct. 599, 88 L.Ed. 692 (1943).

for equitable relief,' 401 U.S. at 54 [91 S.Ct. 746]."

 The injunctive relief sought herein also appears to be barred by 28 U.S.C. § 2283. The defendant Family Court Judges here are acting solely in their capacity as Judges of a state court, and within the apparent scope of their judicial duties. As such they are immune from civil rights actions for money damages, which are sought here. Pierson v. Ray, 386 U.S. 547, 553, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967). Statutes and ruling case law protecting state judges in the discharge of their functions may not be circumvented or vitiated, by pretending to maintain this suit also against their "clerks, servants and agents" for no court can discharge its judicial duties without the aid of clerks, servants and agents.

A statutory (three judge) court would not seem required here because it is not the constitutionality of the statutory scheme which is attacked, but rather the result achieved by its application. Ex parte Bransford, 310 U.S. 354, 60 S. Ct. 947, 84 L.Ed. 1249 (1940). In Canal Theatres, *supra,* the decision of a single District Judge dismissing under the rule of Younger v. Harris, *supra,* was affirmed notwithstanding the general rule, restated as recently as Abele v. Markle, 452 F.2d 1121, 1125 (2 Cir. 1971), that "the question whether to abstain . . . is one for the three-judge court rather than the single district judge."

There are no contested issues of material fact. The parties have consented that defendants' motion for summary judgment pursuant to Rule 56, F.R.Civ. P., be deemed addressed to the amended complaint. The Court has considered all concessions of fact made on the record at the hearings held with respect to plaintiffs' applications for temporary restraining orders and preliminary injunctive relief.

The motion for summary judgment is granted, and the amended complaint is dismissed. Such dismissal is without prejudice to plaintiffs' rights to be asserted in the Family Court, and specifically, is without prejudice to the making of a motion in that Court to vacate service of the summonses, or to vacate the issuance of the outstanding warrants, as having been improvidently issued, or for any other relief to which plaintiffs (respondents there) deem themselves entitled under state law or the Constitution.

The granting of summary judgment makes moot the applications for preliminary injunctive relief, which are therefore denied for that reason.

So ordered.