**UNITED STATES of America, Plaintiff,**

v.

**Alexander T. CALOR, Defendant.**

**No. Crim.A. 01–63–KSF.**

United States District Court, E.D. Kentucky, Lexington Division.

Sept. 17, 2001.

James A. Shuffett, Lexington, KY, Fred E. Peters, Lexington, KY, for Alexander Calor, defendant.

Kenneth Taylor, U.S. Attorney's Office, EDKY, Lexington, KY, for U.S.

### ORDER

FORESTER, Chief Judge.

Presently before the Court is Defendant's motion to dismiss Count One of the Indictment [DE # 9] and Defendant's motion to suppress evidence [DE # 10]. Having been fully briefed, these matters are ripe for review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 2001, Mary Beth Calor filed a domestic violence petition in the Harrison District Court against her husband, Defendant Alexander T. Calor. The Harrison District Court issued an ex parte Emergency Protective Order ("EPO") pur- suant to Kentucky law, restraining Calor from communication and contact with his wife. The EPO provided: "In order to assist in eliminating future acts of domestic violence and abuse; Defendant not to possess any firearms, turn all firearms over to the Sheriff's office." At the time the EPO was issued, a Bushmaster firearm was seized by the Harrison County Sheriff's Department, pursuant to the judge's order in the EPO. The EPO was to be in effect until February 12, 2001, which was the date set in the Order for a hearing.

On February 12, a hearing did occur in Harrison District Court with the Defendant present. At the hearing, John Lair, Calor's retained counsel, made a limited appearance for purposes of requesting an extension of time. The Court extended the EPO and granted the Defendant an extension of time until February 21, 2001. However, on February 14, 2001, with the EPO still in place, Calor was found to be in possession of an H & K compact .45 caliber pistol, an H & K full size .40 caliber pistol, a a Glock model 21 .45 caliber pistol, and a Glock model 23 .40 caliber pistol, and these firearms were seized pursuant to the judge's instructions in the EPO. On March 7, 2001, another hearing was held in which a Domestic Violence Order ("DVO") was issued, which by its terms remained in effect until September 7, 2001. This DVO was dismissed by agreement of the parties on July 11, 2001.

Calor was indicted on July 12, 2001, charged with being in possession of firearms, in and affecting commerce, in violation of 18 U.S.C. § 922(g)(8)(A)(B) and (C)(ii) (possessing firearms while under a court order, issued after a hearing of which the Defendant had actual notice and had an opportunity to participate, that restrained the Defendant from harassing, stalking or threatening an intimate part-

ner). Calor was also indicted on a second count, which charged him with violating 26 U.S.C. § 5861(d). This second count arose from the seizure on February 9, 2001 of the Bushmaster rifle, which the Harrison County Sheriff's Department found to be unregistered in the National Firearms Registration and Transfer Record, and with a barrel length of less than sixteen inches.

## II. DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Count One of the Indictment charges Calor with unlawfully possessing a firearm while subject to a court order as described in 18 U.S.C. § 922(g)(8)(A)(B) and (C)(ii). Section 922(g)(8) provides in pertinent part:

(g) It shall be unlawful for any person—

.  .  .  .  .

(8) who is *subject to a court order* that—

(A) was *issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;*

(B) restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . .

.  .  . .  .  .

to ship or transport in interstate or foreign commerce or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. (emphasis added)

Calor moves to dismiss Count One of the Indictment on the grounds that the court order referred to in the Indictment was not issued after a hearing as required by 18 U.S.C. § 922(g)(8)(A). Specifically, Calor argues that the February 12, 2001 hearing for purposes of the issuance of an EPO does not satisfy the "hearing" requirements of § 922(g)(8)(A)[1]. Calor argues that since the February 12, 2001 EPO was entered against him without a hearing on the merits, the government is necessarily unable to prove an element of the offense and thus Count One of the Indictment must be dismissed with prejudice.

As a preliminary matter, the United States maintains that Calor's motion to dismiss is premature because the existence of a hearing affording an "opportunity to participate" is an element of the offense under 18 U.S.C. § 922(g)(8) and thus is a matter reserved for the jury under proper instruction. While it is true that the question of whether a hearing was held as

---

**1.** Calor acknowledges that the Sixth Circuit has resolved the issue of the constitutionality of 18 U.S.C. § 922(g) based on a Commerce Clause challenge in *United States v. Napier,* 233 F.3d 394 (6th Cir.2000) and *United States v. Baker,* 197 F.3d 211 (6th Cir.1999). However, Calor wishes to preserve his argument that neither *Napier* nor *Baker* can be logically reconciled with *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) and *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

required by 18 U.S.C. § 922(g)(8) is an element of the offense, in the context of this case, this is a determination that may be made by this Court. "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion...." Fed.R.Crim.P. 12(b). The United States asserts that a hearing within the meaning of 18 U.S.C. § 922(g)(8) occurred on February 12, 2001. Calor submits that the record attached to his motion "clearly shows, in the Court's calendar notes, what occurred." [2] Therefore, there is no factual dispute concerning the pertinent events that occurred on February 12, 2001, and Calor's motion pertaining to the legal sufficiency of the hearing is capable of determination by this Court before trial.

■ Calor argues that the firearms violations in 18 U.S.C. § 922(g) are triggered only after the Defendant has had a hearing *on the merits* of the issuance of a final DVO. Calor submits the Harrison District Court calendar notes from the February 12, 2001 hearing, three days after the EPO was issued, which provide:

> (Lair [Calor's counsel] making limited appearance for the purpose of requesting extension of time) Cont. to 2/21/01 @ 11:00 a.m. @ request of [Calor] to obtain counsel; EPO extended w/ modification; [Calor's] permit to carry concealed weapon is surrendered—to be held in file pending further orders.
>
> /s/ William D. Probus
>
> Harrison District Judge

Contrary to Calor's contentions, the plain language of 18 U.S.C. § 922(g)(8)(A) requires only a "court order ... issued after a *hearing* of which such person received actual notice, and at which such person had an *opportunity* to participate." (emphasis added). Calor cites no authority interpreting this seemingly plain language to require a hearing on the merits. Likewise, Calor cites no authority for the proposition that the statute, or due process for that matter, imposes different requirements on a hearing for purposes of issuing an EPO than on a hearing for purposes of issuing a DVO. In fact, Calor acknowledges that the only cases interpreting the statute cited in his motion to dismiss both require the issuance of an order merely after a hearing of which the Defendant received actual notice and at which he had an opportunity to participate. *See United States v. Baker*, 197 F.3d 211 (6th Cir. 1999).

The Sixth Circuit has not yet addressed the meaning of the hearing requirement for purposes of this statute. However, the Seventh Circuit has interpreted the above "hearing" and "opportunity to participate" requirement in *United States v. Wilson*, 159 F.3d 280 (7th Cir.1998). In *Wilson*, the defendant was subject to an EPO and was charged with illegally possessing weapons in violation of 18 U.S.C. § 922(g)(8). *Id.* at 284. The *Wilson* defendant then participated in a hearing without the benefit of counsel, in which a "plenary order" [3] was issued against him without the court taking any evidence. *Id.*

---

**2.** Calor also acknowledges in his reply to the government's response to his motion to dismiss that "[t]he audio tape recording of the Court proceedings is also available and does not contradict the written record." Thus, it is unnecessary for this Court to hold a hearing or to delve beyond the written record of the February 12, 2001 proceedings.

**3.** A Plenary Order under Illinois law is issued for a two year period and appears to be equivalent to a Kentucky Domestic Violence Order. However, the terminology of the court order or the length of time in which it is in place does not alter the language of 18 U.S.C. § 922 merely requiring a "court order." Thus, the reasoning of *Wilson* applies with equal force to Calor's EPO.

*Wilson* found that the defendant had a "hearing" and "opportunity to participate" as required by 18 U.S.C. § 922(g)(8)(A) despite the fact that the defendant proceeded *pro se,* no evidence was taken; and the defendant did not object to the order issued. *Id.* at 290. Due process was satisfied because the defendant received "notice of the hearing at a meaningful time and had an opportunity to participate in a meaningful manner." *Id.*

Here, Calor clearly had notice of the hearing to extend the EPO. Calor was served on February 9, 2001, and appeared for the hearing in Harrison District Court on February 12, 2001. The fact that Calor's counsel only made a "limited appearance" and convinced the Court to grant an extension of time does not alter the fact that a hearing occurred and the Defendant had an "opportunity to participate." The Seventh Circuit has held that defendants may have an "opportunity to participate" in the hearing for purposes of 18 U.S.C. § 922(g)(8)(A) regardless of the presence of counsel. *Id.* Calor has a college education and M.B.A.; he was certainly competent to articulate objections to the EPO without the presence of counsel. Calor received actual notice of the hearing; it was held at a meaningful time before his liberty interest was interfered with (i.e., before weapons charges were filed); and in a meaningful manner.

Calor's would-be imposition of a hearing on the merits requirement into 18 U.S.C. § 922(g)(8)(A), a statute that otherwise merely requires an "opportunity to participate" in the hearing, is problematic beyond the obvious attempt at a judicial "rewriting" of the statute. Such a "hearing on the merits" requirement would allow a defendant/respondent subject to an EPO order to forestall federal firearm charges by moving to continue the hearing, or merely failing to show up for the hearing. *Cf. United States v. Bunnell,* 106 F.Supp.2d 60, 66 (D.Maine, 2000) (rejecting due process challenge to 18 U.S.C. § 922(g)(8)(A) by defendant who was given actual notice of hearing but failed to attend). Instead, this Court finds that Calor had notice of the hearing that occurred at a meaningful time, and Calor had the *opportunity* to participate in the hearing. Calor's motion to dismiss Count One is denied.

## III. DEFENDANT'S MOTION TO SUPPRESS

On February 9, 2001, Harrison County deputy sheriffs served the EPO on Calor. In addition to restraining Calor from coming about his wife and from committing acts of domestic violence, the EPO also contained the following provision:

> In order to assist in eliminating future acts of domestic violence and abuse; Defendant not to possess any firearms, Turn all firearms in to H/C Sheriff's Office. [sic].

At the time the EPO was served, the deputy sheriffs seized Calor's firearms, and Calor complied with the judge's order by turning over certain firearms, including the Bushmaster gun that is the subject of this motion.

Calor now argues that the seizure of firearms was made without a search warrant at his house, in the absence of exigent circumstances, and thus an unreasonable seizure violative of the Fourth Amendment. Calor also moves that all oral statements made by him in connection with the alleged warrantless seizure constitute fruit of the poisonous tree and should also be suppressed.

Kentucky law provides broad authority for a trial judge, upon ex parte petition of a victim of domestic violence, to enter any order necessary to protect the victim pending the later hearing on the merits for issuance of a DVO. Specifically, in addition to the order restraining the Defendant

from committing further acts of domestic violence and abuse, the trial court may, *inter alia,* "[e]nter other orders the court believes will be of assistance in eliminating future acts of domestic violence and abuse; or any combination thereof." K.R.S. § 403.740(1)(f). The EPO in this case specifically provides that the seizure of the weapons was "[i]n order to assist in eliminating future acts of domestic violence and abuse," which are enumerated criteria for the issuance of an EPO pursuant to K.R.S. 403.740(1)(b) & (f). Clearly, the Harrison District Court was acting within the framework of the Kentucky statute when ordering seizure of the firearms on February 9, 2001. Moreover, the EPO provided that Calor was to vacate the residence located at "Rt. # 5, Box 4765B, Carl Stevens Rd., Cynthiana, Ky." The EPO thus necessarily includes the authority for the sheriff's department to enter the house to enforce this provision as well as the seizure of the weapons provision. Therefore, the deputy sheriffs were acting pursuant to a valid search warrant, issued by the terms of a constitutional statute, when the Bushmaster weapon was seized.

■■■ Calor argues in the alternative that even if the sheriffs were acting under authority to seize the weapon, such seizure without a *prior* hearing violates due process. However, contrary to Calor's contention, due process does not categorically require a hearing before one is initially deprived of a property interest. Instead, the timing of a hearing (i.e., whether a hearing is required pre- or post-deprivation) is determined on a sliding scale that requires balancing the impact the taking has on the individual and the state interest

being advanced. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Calor confuses the line of cases, including *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which stand for the proposition that a hearing must be had before one is *finally* deprived of his property. These cases "do not deal at all with the need for a predetermination hearing where a full and immediate post-termination hearing is provided." *Parratt,* at 540, 101 S.Ct. 1908.[4]

■■■ The Supreme Court has upheld pre-hearing seizure of property in situations requiring "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking...." *Id.* (citing *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* at 335, 96 S.Ct. 893 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The familiar *Mathews v. Eldridge* balancing test requires consideration of three factors: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest in foregoing addi-

---

4. Calor notes that *Parratt v. Taylor* was "overruled substantially" by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). However, Calor fails to point out that the portion of *Parratt* overruled was its holding that a due process property interest was implicated by the *negligent* act of a state offi-

cial. *Parratt* at 334–35, 101 S.Ct. 1908. Now, after *Daniels,* the sliding scale due process right to a hearing only applies to *intentional* governmental deprivations of life, liberty or property. *Id.* Thus, *Daniels* does not weaken *Parratt* in any way relevant to this case.

 

tional procedural requirements. *See Mathews* at 335, 96 S.Ct. 893.

Here, the Defendant's private interest at stake is, in essence, the property right to enjoy his firearm collection during the three day period of time between seizure of the guns on February 9, 2001 and the hearing that occurred on February 12. The risk of an erroneous deprivation of Calor's property rights in this context is slight, considering that the hearing held three days later and the hearing on the merits held March 7, 2001 to issue the Domestic Violence Order provided a meaningful and timely means by which to assess the pre-hearing deprivation of property. The government's interest in this case, namely protecting a victim of domestic violence from further violence and potential death, is certainly great. This government interest is further magnified by the "necessity of quick action" to remove the weapons, the means of perpetrating violence or death on Mrs. Calor, from the Defendant's possession. Clearly, the potential for grave injury and loss of life at stake in this pre-hearing deprivation of property case provide a stronger government interest than prior pre-hearing deprivation cases in which the government interest was merely economic. *See, e.g., Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (approving pre-hearing rent control orders by government in face of due process challenge); *cf. Corn Exchange Bank v. Coler,* 280 U.S. 218, 50 S.Ct. 94, 74 L.Ed. 378 (1930) (approving statute providing for seizure of property of absconding husband and father upon ex parte warrant, without a predeprivation hearing). Calor's due process argument for the suppression of the evidence of the illegal Bushmaster firearm and his statements made in connection therewith is denied.

## IV. CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) Defendant's motion to dismiss Count One of the Indictment [DE # 9] is DENIED;

(2) Defendant's motion to suppress evidence [DE # 10] is DENIED.