Samantha DAUGHERTY, (now Bucher), Appellant,

v.

John Stephen TELEK, Appellee.

No. 2011–SC–000043–DGE.

Supreme Court of Kentucky.

May 24, 2012.

Dina Abby Bartlett, Louisville, KY, Counsel for Appellant.

Carl Edwin Knochelmann, Jr., Covington, KY, Counsel for Appellee.

Jeffrey Allen Been, Legal Aid Society, Louisville, KY, Counsel for Amicus Curiae.

Opinion of the Court by Justice VENTERS.

The family court division of the Kenton Circuit Court granted the petition of Appellant, Samantha Daugherty (now Bucher) and issued a Domestic Violence Order (DVO) against Appellee, John Telek, to remain in effect for three years. Telek appealed the order to the Court of Appeals, which held that the family court lost jurisdiction to issue the DVO because it failed to conduct the DVO hearing within fourteen days after the issuance of an emergency protective order (EPO) as required by KRS 403.740(4). Because we conclude that the Kenton Family Court did not lack jurisdiction to issue the DVO and that it properly followed statutory requirements for the issuance of a DVO, we reverse the Court of Appeals and remand this case to that court for consideration of an unresolved issue.

A brief review of the facts in the record discloses that on August 18, 2009, Appellant filed a petition for a DVO against Telek. Pursuant to KRS 403.740(1), the family court issued an EPO to remain in effect until August 26, 2009, the date set for the full hearing on the issuance of a DVO. On that date, when the case was called for hearing, Telek's counsel advised the Court that because the parties' child had witnessed the incident described in the DVO petition, the child's guardian *ad litem* wanted to be present.[1] On the guardian's behalf, Telek's attorney requested that the DVO hearing be rescheduled and consolidated for hearing with a related child custody issue. This postponement was advantageous to Telek because he expected the guardian *ad litem* to present testimony from the child's perspective that would be favorable to Telek. The judge agreed to

---

1. The guardian *ad litem* had been appointed to represent the child in an earlier, but ongoing, domestic dispute between the parties.

the postponement and said that he would re-issue the EPO at fourteen-day intervals until the date of the combined custody/DVO hearing, which was then rescheduled for November 13, 2009. No objection was voiced by any party, either to the new hearing date or to the proposal to reissue an EPO at fourteen-day intervals until the hearing date.

On September 9, 2009, Telek appeared in court for the call of the domestic violence docket. He was informed by the judge that his presence was unnecessary because his attorney had obtained an "off the docket" hearing date, referring to the November hearing date. As expected, the judge then reissued the EPO for another fourteen-day period which expired on September 23, 2009. No objection to the re-issuance of the EPO was made at the September 9 appearance.

However, on September 22, Telek filed a motion to dismiss the EPO, citing KRS 403.740(4) as authority for the position that the family court lost jurisdiction of the matter when it failed to hold the DVO hearing within fourteen days after the issuance of the original EPO. The family court judge took the motion under submission, and re-issued the EPO until a hearing scheduled for October 7.[2] On October 7, the court issued another fourteen-day EPO.

Finally, on October 21, 2009, the family court overruled Telek's motion to dismiss and proceeded with the full hearing on the issuance of a DVO.[3] After hearing the evidence, which consisted of testimony from each party and a brief statement by the guardian *ad litem*, the court found that an incident of domestic violence had occurred and entered the DVO. Telek subsequently appealed the DVO to the Court of Appeals.

In the Court of Appeals, Telek argued that, because the family court failed to follow the time constraints of KRS 403.740(4), the DVO was entered after it had lost subject matter jurisdiction. Alternatively, Telek argued that even if the court had not lost jurisdiction, the evidence presented was insufficient to establish the essential facts required for the entry of a DVO.

The Court of Appeals accepted Telek's argument that KRS 403.740(4) required the DVO hearing to be held within fourteen days after the initial issuance of an EPO, and once beyond that date a DVO based upon the original petition could not be issued.[4] Therefore, since the initial EPO was issued on August 18, the Court of Appeals reasoned that by the time of the DVO hearing, the family court lacked subject matter jurisdiction to issue the DVO. Citing *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970) for the elemen-

---

2. According to references in the record, after the family court judge took the motion to dismiss under advisement, Telek sought a writ of prohibition in the Court of Appeals, asserting the family court was proceeding without subject matter jurisdiction. The Court of Appeals apparently denied the writ, but granted an order for some kind of interim relief. That order, if indeed it exists, is not part of the record certified to this Court.

3. The October 7th family court docket was being handled by a different judge, who declined to proceed in deference to the original judge who was more familiar with the parties and the case. At that appearance, Telek's counsel moved for a ruling on his pending motion and objected to the re-issuance of the EPO. When that relief was denied, he asked for and was granted, some modification of the conditions on the EPO.

4. The version of KRS 403.740(4) in effect when the EPOs and the DVO were issued is set out elsewhere in this opinion. In 2010, the General Assembly substantially modified that section, as also discussed herein.

tary principle that subject matter jurisdiction cannot be waived, the Court of Appeals concluded that Telek's acquiescence in the original continuance and his failure to object to the serial re-issuance of EPOs could not override what it perceived as the statute's jurisdictional time constraints for the entry of a DVO.

We granted discretionary review to consider whether the statutory time limit for issuing a DVO affects the subject matter jurisdiction of the family court. We also examine the Court of Appeals's construction of the version of KRS 403.740(4) applicable in 2009, when the DVO against Telek was sought. Our construction of that version of KRS 403.740 has little applicability for the issuance of future EPOs and DVOs. However, since domestic violence orders can be in effect for as long as three years, the validity of some existing DVO's could yet be affected by our holding in this case.

As set forth below, we first conclude that the time constraints placed upon the issuance of a DVO do not affect the subject matter jurisdiction of a family court division of the Circuit Court. Second, we conclude that the process employed by the family court in this case, the repeated reissuance of an EPO until the hearing date, did not violate the version of KRS 403.740(4) then in effect. These dispositions render moot the question of whether Telek acquiesced in setting a hearing date well beyond the fourteen-day time frame established in the statute, and thereby waived his right to complain.

## I. THE FAILURE TO ISSUE A DOMESTIC VIOLENCE ORDER WITHIN FOURTEEN DAYS OF THE INITIAL EMERGENCY PROTECTIVE ORDER DID NOT DEPRIVE THE FAMILY COURT OF SUBJECT MATTER JURISDICTION

Telek's argument, as well as the Court of Appeals opinion now before us, is based upon the premise that the family court's failure to follow a statutory procedure left it without subject matter jurisdiction to issue a domestic violence order. We disagree. In deciding that the family court's deviation from a statutory procedure divested it of subject matter jurisdiction, the Court of Appeals confused a court's erroneous action within its jurisdiction with a court acting outside its subject matter jurisdiction.[5] Subject matter jurisdiction of each Court within the Court of Justice[6] is established by the constitutional provisions and statutes assigning to the courts specific types of claims and causes of action ("kinds of cases"). *See Hisle v. Lexington–Fayette Urban County Gov't,* 258 S.W.3d 422, 429–30 (Ky.App.2008).

We have often noted, most recently in *Harrison v. Leach,* 323 S.W.3d 702, 705–06 (Ky.2010) (quoting *Duncan v. O'Nan,* 451 S.W.2d 626, 631 (Ky.1970)), that "subject matter jurisdiction does not mean 'this case' but *'this kind of case.'* "[7] We also

---

5. As discussed in the following section, we disagree with the Court of Appeals's opinion that the process employed by the family court violated KRS 403.745.

6. The Kentucky Constitution § 109 assigns the judicial power of the Commonwealth to the Court of Justice, and divides the Court of Justice into a Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court, and a trial court of limited jurisdiction known as the District

Court. In § 112, the family courts are established as a division of the Circuit Court.

7. *Duncan,* 451 S.W.2d at 631. This quotation from *Duncan* seems to have originated in an opinion of the Court of Appeals of New York, *In Re Estate of Rougeron,* 17 N.Y.2d 264, 270 N.Y.S.2d 578, 217 N.E.2d 639, 643 (1966): "In other words the rule that subject-matter jurisdiction cannot be born of waiver, consent or estoppel has to do with those cases only where the court has not been given any power

quoted *Duncan* in *Gordon v. NKC Hospitals, Inc.*, 887 S.W.2d 360 (Ky.1994), in which we explained that a court is deprived of subject matter jurisdiction only where that court has not been given, by constitutional provision or statute, the power to do anything at all. To determine subject matter jurisdiction, the pleadings should be examined and taken at face value. The court has subject matter jurisdiction when the "kind of case" identified in the pleadings is one which the court has been empowered, by statute or constitutional provision, to adjudicate. *Id.* at 362.

Once filed, a court has subject matter jurisdiction of the case so long as the pleadings reveal that it is the kind of case assigned to that court by a statute or constitutional provision. A court, once vested with subject matter jurisdiction over a case, does not suddenly lose subject matter jurisdiction by misconstruing or erroneously overlooking a statute or rule governing the litigation.

We agree with the expression of the law recited by the Court of Appeals in *Hisle*, 258 S.W.3d at 429–30: "Once a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the *existence* of jurisdiction." [8] What Telek and the Court of Appeals regard as the family court's failure to follow a statute is, at most, the erroneous *exercise* of subject matter jurisdiction—it is not a lack of subject matter jurisdiction and it does not affect the existence of subject matter jurisdiction.

In this matter, there is no question that domestic violence proceedings under KRS Chapter 403 are within the subject matter jurisdiction of the family court division of the Kenton Circuit Court. Section 112(6) of the Kentucky Constitution authorizes the designation of one or more divisions of the Circuit Court within a judicial circuit as a family court division, and further provides that "[a] Circuit Court division so designated shall retain the general jurisdiction of the Circuit Court and shall have additional jurisdiction as may be provided by the General Assembly." Further, KRS 23A.100(2), which assigns specific types of cases to family court divisions of the Circuit Court provides, in relevant part: "In addition to general jurisdiction of Circuit Court, a family court division of Circuit Court shall have the following additional jurisdiction: (a) Domestic violence and abuse proceedings under KRS Chapter 403 subsequent to the issuance of an emergency protective order in accord with local protocol under KRS 403.735[.]"

The Court of Appeals erred by holding that the Kenton Family Court lost subject matter jurisdiction of this matter. However, while a failure to comply with KRS 403.740 would not have divested the family court of subject matter jurisdiction to enter a DVO, Telek still may be afforded relief from the DVO if its entry after the expiration of the time constraints identified in KRS 403.740 was otherwise an improper exercise by the family court of its judicial power. This question leads up to the analysis in Section II below.

---

to do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime. In other words, 'subject matter' does not mean 'this case' but 'this kind of case'...."

8. *See Buckalew v. Buckalew*, 754 N.E.2d 896, 898 (Ind.2001) (emphasis in original). *See*

*also Maryland Bd. of Nursing v. Nechay*, 347 Md. 396, 701 A.2d 405, 410 (1997) (stating "[o]nce a court acquires fundamental jurisdiction of a case, any judgment that it renders in that case 'is not invalidated because of an [alleged] improper exercise of that jurisdiction.'").

## II. THE FAMILY COURT'S ENTRY OF THE DVO DID NOT VIOLATE THE TIME CONSTRAINTS OF KRS 403.740

Telek asserts that the fourteen-day timing provision of KRS 403.070 was violated because the hearing and entry of the DVO on October 21, 2009, occurred some two months after the initial issuance of an EPO. Specifically, he argues that the serial re-issuance of EPOs by the family court is not authorized by the provisions of KRS 403.740(4) which limit the lifespan of an EPO to fourteen days, and that the DVO cannot be valid if it was issued more than fourteen days after the filing of the petition and the issuance of the initial EPO.

Telek's argument is based on the version of KRS 403.740(4) as it existed in 2009:

> An emergency protective order issued in accordance with this section shall be effective for a period of time fixed in the order, but not to exceed fourteen (14) days. Upon the issuance of an emergency protective order, a date for a full hearing, as provided for in KRS 403.745, shall be fixed not later than the expiration date of the emergency protective order. An emergency protective order shall be reissued for a period not to exceed fourteen (14) days if service has not been made on the adverse party by the fixed court date and time or as the court determines is necessary for the protection of the petitioner.

He argues, as the Court of Appeals held, that the last phrase of the statute, "or as the court determines is necessary for the protection of the petitioner," applies only when the adverse party has not been served by the hearing date set in the original EPO. We find that interpretation to be contrary to the basic grammatical construction of English sentences. The sentence in question begins with the clause: "An emergency protective order shall be reissued for a period not to exceed fourteen (14) days. . . ." That clause is followed and modified by two alternative phrases joined by the conjunction, "or." The full clause reads: "if service has not been made on the adverse party by the fixed court date and time *or* as the court determines is necessary for the protection of the petitioner." (emphasis added). Plainly read, those phrases provide two circumstances under which an existing EPO may be reissued for as long as fourteen additional days. One is when the respondent has not been served before the time of the hearing. The other is when the court determines that reissuance of the EPO is necessary to protect the petitioner. *See Board of Nat. Missions of Presbyterian Church in U.S. of America v. Harrel's Trustee*, 286 S.W.2d 905, 907 (Ky.1956) ("In common and natural usage the word 'or' is disjunctive and expresses an alternative as between either of two or more separate subjects or conditions and implies an election or choice as between them.")

In reviewing the statute as a whole, and then looking at the actual facts of this case, we fail to see where the family court deviated from the statute in any meaningful way. The original EPO, issued August 18, 2009, was effective for a mere eight days, and its expiration date of August 26 was the original date set for the full hearing as contemplated by the statute. When, on August 26, a reasonable request for a postponement was made, the judge agreed. Upon determining that the EPO was necessary for the petitioner's protection, he then reissued the EPO for a period that did not exceed an additional fourteen days.[9]

---

9. The dissenting opinion agrees with our con-    struction of KRS 403.740(4), but finds as a

■ We agree with Telek that KRS 403.740(4)'s requirement for "fix[ing]" a date and time for the DVO hearing before the expiration of the EPO and within fourteen days of the issuance of the EPO means that the hearing must be held within that time frame. However, the use of the verb, "to fix," in its various forms and tenses, does not mean that the hearing date, once set, becomes immutable. Like virtually every other kind of hearing conducted in our courts, the full hearing on a DVO may be rescheduled as the circumstances reasonably require. While the statute in effect at the time did not expressly authorize extending the life of an EPO by re-issuing it in serial fashion every fourteen days until a hearing date, neither did it specifically bar that process.[10] Therefore, we do not find error in the process employed by the trial court in issuing the DVO against Telek.[11]

## III. TELEK IS ENTITLED TO APPELLATE REVIEW OF HIS CLAIM THAT THE ENTRY OF THE DVO WAS BASED UPON INSUFFICIENT EVIDENCE

Although Telek argued to the Court of Appeal that the evidence presented at the DVO hearing was insufficient to support the entry of a DVO, the Court of Appeals found it unnecessary to address that issue because it ruled in his favor on the grounds of subject matter jurisdiction. He argues now that he is still entitled to an appellate review of the sufficiency of the evidence even if we reverse the Court of Appeals.

■ Telek did not file a cross-motion for discretionary review, but he did raise this issue in the brief he filed with this Court. By doing so, he complied with the process we outlined in *Fischer v. Fischer*, 348 S.W.3d 582, 597 (Ky.2011) for preserving appellate review of issues that, although presented to the Court of Appeals, were not decided therein. We agree with Telek that he is entitled to appellate review of his argument that the family court erred by entering a DVO upon insufficient evidence.

In *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467, 479 (Ky.2010), we held that where the Court of Appeals has based its reversal of a trial court order upon grounds that eliminate its need to review other grounds raised (like, for example, lack of subject matter jurisdiction or the failure of a judge to recuse) and upon discretionary review the Supreme Court reverses the grounds upon which the Court of Appeals based its decision, an appropriate disposition is to remand the case to the Court of Appeals for its consideration of the undecided issue(s). Having now reversed the Court of Appeals upon the grounds that formed the basis of its decision, we remand the case to the Court of Appeals for consideration of Telek's

factual matter that the continuation of a protective order against Telek after September 23 did not meet the statutory requirement of "necessary for the protection of the petitioner [Appellant]." Telek never argued that re-issuance of the EPO was not necessary. Furthermore, the trial court's decision to issue a DVO effective for three years emphasizes its belief that a court order for Appellant's protection was an ongoing necessity. Whether the evidence was sufficient to establish that necessity is a question we redirect to the Court of

Appeal upon remand as noted below in section III of this opinion.

10. The post 2010 version of KRS 403.740(4) provides for serial extensions of the original EPO when the adverse party "is not present [at the hearing] and has not been served[.]"

11. Because we find that the family court did not err by the procedure it used in issuing the DVO, we need not determine whether Telek's actions waived his right to appeal.

challenge to the sufficiency of the evidence.

## IV. CONCLUSION

For the reasons set forth above, we reverse the decision of the Court of Appeals and remand this matter to the Court of Appeals for proceedings consistent with this opinion.

MINTON, C.J., ABRAMSON, NOBLE, and SCHRODER, JJ., concur. SCOTT, J., concurs in part and dissents in part by separate opinion, in which CUNNINGHAM, J., joins.

SCOTT, J., concurring in part and dissenting in part:

I agree with the majority that the Kenton Family Court unquestionably had subject matter jurisdiction over Bucher's domestic violence petition. However, I do not believe that the family court had the legal authority to continue reissuing the EPO and postponing the DVO hearing after September 23, 2009. Therefore, I must dissent from the portion of the majority opinion which approves of the family court's actions after that date.

An EPO provides extraordinary relief under the law.[12] It permits a trial court to impose severe restrictions on a respondent based solely upon the ex parte assertions of a petitioner. See KRS 403.740(1). Specifically, on the basis of a petitioner's unchallenged statements, the trial court may deprive a respondent of his [13] children, his financial resources, his home, and his Second Amendment rights. KRS 403.740(1)(c)–(f). See U.S. v. Calor, 172

F.Supp.2d 900, 906–07 (E.D.Ky.2001) (holding that an EPO provision requiring a respondent to surrender his firearms without a hearing does not violate due process).

Because the consequences of an EPO can be devastating and the proof upon which it is based can be completely one-sided, KRS 403.740(4) limits the lifespan of an EPO. In restricting the duration of EPOs, the General Assembly sought to strike a balance between two competing interests—protecting victims of domestic violence and preserving the rights of accused perpetrators. Under the law as it existed in 2009, an EPO could be made effective for no more than fourteen days. KRS 403.740(4). Prior to the expiration of the EPO, the trial court was required to conduct a full hearing on the domestic violence petition, at which both parties must be permitted to present evidence. Id. See also Wright v. Wright, 181 S.W.3d 49, 53 (Ky.App.2005) (vacating entry of a domestic violence order where the trial court did not give both parties a meaningful opportunity to be heard). The court could delay a full hearing and reissue the EPO—again to be effective for no more than fourteen days—only under limited circumstances. See KRS 403.740(4).

Under KRS 403.740(4), the trial court was permitted to reissue an EPO if one of two requirements was met: (1) the respondent had not been served; or (2) the court determined that reissuance was *necessary* to protect the petitioner. Id. (emphasis added). Outside of KRS 403.740(4), there was one additional basis upon which the

---

12. As the majority notes, the Commonwealth's domestic violence statutes were revised extensively in 2010. My analysis is based on the law as it existed prior to the 2010 amendments.

13. For the sake of understandability, I use male pronouns to refer to respondents in general. However, I am mindful that petitioners and respondents may be either gender and my disagreement with the majority's conclusion on this issue applies with equal force irrespective of the parties' sexes.

trial court could reissue an EPO and delay the full evidentiary hearing: waiver of the time limitation by the respondent. Because the fourteen-day requirement was intended to protect the rights of the respondent by guaranteeing him a speedy opportunity to challenge the petitioner's ex parte assertions, a respondent could validly waive this statutory protection. *See Commonwealth v. Townsend*, 87 S.W.3d 12, 15 (Ky.2002) (noting that a statutory provision which "inures to the benefit of a defendant . . . can be the subject of a valid waiver.").

In the instant case, it is undisputed that Telek was properly served. Therefore, under KRS 403.740(4), the trial court could validly reissue the EPO only if reissuance was *necessary* to protect Bucher until a full hearing could be conducted. Additionally, the court could validly reissue the EPO if Telek waived his right to a timely hearing. After reviewing the record, I cannot conclude that either of these conditions existed *after* September 23, 2009.

As the majority correctly notes, the family court intended to reschedule the DVO hearing from August 26, 2009 to November 13, 2009 by reissuing the EPO every fourteen days in serial fashion. The purpose of this delay was to allow the guardian *ad litem* (GAL) to interview the child, who was present during the alleged incident, and to be present for the hearing to report the child's version of the events to the court.[14] Thus, under KRS 403.740(4), the court found it *necessary* to reissue the EPO to protect Bucher until it could obtain evidence from a key witness, the parties' child. Additionally, Telek did not ini-

tially object to the extended postponement of the DVO hearing; therefore, he waived his right to a timely hearing. *See New York v. Hill*, 528 U.S. 110, 115, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (holding that defense counsel can validly waive a defendant's right to be tried within a statutory time period by accepting a trial date beyond the statutory time period); *Parks v. Commonwealth*, 89 S.W.3d 395, 398 (Ky. 2002) ("Pursuant to *Hill*, the agreement by [the defendant] to a trial date beyond the limits of the [statute] constituted a waiver of his speedy trial rights.").

However, on September 22, 2009, Telek filed a motion requesting that the court dismiss Bucher's domestic violence petition. At the hearing on this motion, which was held on September 23, 2009, Telek informed the court that he objected to continued reissuance of the EPO. At that time, the GAL also informed the court that he had spoken with the child and was prepared to relay the child's version of the events to the court. It was at this point, in my opinion, that the family court lost the legal authority to continue reissuing Bucher's EPO.

By objecting to the family court's continued reissuance of Bucher's EPO, Telek terminated his continuing waiver of the fourteen-day time limitation. Thus, the family court could no longer reissue on the basis of waiver. Furthermore, based on the GAL's statements, it was no longer *necessary* to postpone the hearing to obtain evidence from the parties' child.[15] The GAL was present and prepared to report the child's version of the incident to

---

14. The court was also attempting to conserve judicial resources by consolidating the DVO hearing with pending matters in the parties' custody case.

15. I would not find that the court's desire to consolidate the DVO and custody proceedings

rendered reissuance of the EPO necessary. While I acknowledge the value of judicial economy, I do not believe it is so important as to *necessitate* reissuance of an EPO where there is no other justification for the reissuance.

the court. As a result the family court lacked the authority to continue reissuing the EPO under KRS 403.740(4). Despite this lack of authority, the family court reissued the EPO two additional times.

Based on the foregoing, I would hold that the family court lacked the authority to reissue Bucher's EPO after September 23, 2009. Thus, the two reissuances which occurred on and after that date were invalid. Therefore, I would remand this case to the family court for dismissal of Bucher's domestic violence petition without prejudice.[16]

CUNNINGHAM, J. joins.

---

16. I believe that dismissal without prejudice is appropriate because Bucher's petition was not validly adjudicated.