Chief Judge Desmond.
Petitioner-appellant, born in France in 1903 and a life-long citizen and resident of that country, was an acknowledged illegitimate son of Marcel J. Kougeron, a native of France born in 1875 who became an American citizen in 1926 and who died in Switzerland on April 15, 1954, leaving a will which gave his entire estate to his widow, the respondent herein, who was of French birth and whom the deceased had married in Chicago in 1937 and who is now about 86 years old. Just before his death the testator had been living in a home he owned in a Swiss village in the Canton of Geneva. The Appellate Division order which is on appeal here affirmed a denial by the New York County Surrogate’s Court of petitioner’s 1961 application to vacate or reopen the 1957 decree of that court admitting the will to probate and to vacate or reopen a 1958 decree which had settled the account of the administrator c. t. a. and had directed distribution of the net estate to respondent widow.
Summarized, appellant’s position is this: that because at death decedent had personal property in his possession in Switzerland (besides other personalty in New York City) the succession thereto is by a Swiss-United States treaty of 1850 hereafter discussed, to be decided by the Swiss courts according to Swiss law, that the New York courts, therefore, had no subject-matter jurisdiction, that under Swiss law petitioner would be entitled to a statutory share (a little more than half) of that *268 property, and that the New York courts had no right to assume jurisdiction as to the property which was actually in Switzerland at the time of death and had its situs there but was soon afterwards brought to New York by the widow who then commenced the probate proceedings in New York. While conceding that he took part in the New York probate proceedings and litigated the question of domicile there decided against him, petitioner argues that the New York outcome is not conclusive against him since, so he asserts, neither petitioner nor the Surrogate knew at that time that decedent held property in Switzerland which, as petitioner reads the treaty, had to be administered by the Swiss courts according to Swiss law. Petitioner points out that he was not made a party to the accounting proceedings, presumably because on probate he had already been barred from any share in the estate.
A summary of respondent’s position is: that the 1957 probate decree is conclusive against any claim of petitioner since he Avas cited and appeared in that proceeding and filed objections to the assumption of jurisdiction by the New York County Surrogate’s Court, the ground of petitioner’s objections at that time being his assertion that decedent had been domiciled in Switzerland, not New York, and that the treaty protected petitioner’s right of inheritance. Eespondent argues, therefore, not only that petitioner’s alleged rights were defeated by the probate decree, but that petitioner had no such rights since, as respondent reads it, the Swiss-American treaty applies Swiss law to personal property of Swiss domiciliaries or nationals only and that, in fact and as determined by the probate decree, decedent was a United States citizen sojourning in Switzerland to whose personalty, wherever situated, Savíss law did not apply under the treaty or otherwise.
Before going to other law questions presented, Ave must pass on questions as to our jurisdiction over this appeal. Petitioner’s appeal from so much of the order below as refused to vacate the probate must be dismissed for nonfinality. However, the other part of the order appealed from (the part denying vacatur of the settlement of the account) is final and appeal-able as to petitioner since he had not been made a party to the accounting proceeding (Cohen and Karger, Powers of the New York Court of Appeals, p. 188). Also, the appeal can lie from *269 that latter part of the order although it is from a unanimous affirmance, since there is a constitutional question raised by petitioner’s arguments as to the treaty (Matter of Rougeron, 16 N Y 2d 882).
The Surrogate’s decision which denied vacatur of the two decrees did not involve any consideration of the treaty or of proceedings in the Swiss courts now to be discussed herein. The Surrogate held that, since the probate decree which expressly barred petitioner from participation in the estate had become final without appeal, petitioner was incapable of objecting to the final account and order of distribution.
But petitioner calls attention to court proceedings and orders and judgments in Switzerland. Two weeks after her husband’s death the widow and a notary filed in the appropriate Geneva tribunal an inventory of her husband’s estate. This document described the decedent as having* been domiciled in Geneva and listed, as his assets located in Switzerland at his death, cash and various corporate stocks, also mentioning that decedent had deposit accounts in several New York banks. Four months later the widow (again ex parte) obtained from a Swiss court (Justice of the Peace) a “ preliminary Certificate of Heirship ” certifying that the widow was the sole heir of decedent and of his whole estate. ■ Although the issue is not fully briefed, it seems undisputed that the Swiss certificate would ordinarily stand in Switzerland as evidencing a “ common ” or “ simple ” form of probate, to stand unless and until a formal contest should be filed (see 95 C. J. S., Wills, § 318). In January, 1955 petitioner in a Swiss court asked for a sequestration order which was granted, but an appellate court reversed and denied relief, apparently because of lack of jurisdiction in the Swiss tribunals. In April, 1955 the widow filed in New York the probate petition above described and which resulted in a decree made after a trial that petitioner had no interest in the estate. Meanwhile as we have said, the property which decedent had with him in Switzerland when he died had been removed by the widow to New York, several months after death.
After petitioner’s first Swiss lawsuit had failed he commenced (before the New York probate) another action or proceeding in a Swiss court which- was decided against him on the merits in April, 1958. On appeal, however, he was successful, obtaining *270 ill November, 1958 a decree of the Court of Appeals of Geneva which adjudged that the estate was under the treaty governed by the Swiss law, and that the Swiss courts have exclusive jurisdiction as to any dispute arising in the estate. This decree granted petitioner a “statutory compulsory share” (apparently 9/16ths) in the estate and ordered the widow to pay him that share and to furnish him full information as to the property in the estate. This Swiss decree included a declaration that ‘ ‘ the concept of domicile must be determined in accordance with the lex fori ”, that is to say in accordance with Swiss law and not in accordance with American concepts, and a finding that “ deceased at the time of his death was actually domiciled in Geneva ”.
Petitioner ’s sole reliance is on the Swiss-United States treaty of 1850 and its article VI which reads: ‘ ‘ Any controversy that may arise among the claimants to the same succession, as to whom the property shall belong, shall be decided according to the laws and by the judges of the country in which the property is situated.” This language, argues petitioner, requires us to hold that the personal assets of deceased, which were in Switzerland when he died, must be distributed according to Swiss law, even though deceased was a United States citizen and even though it has been held by a Surrogate’s decree handed down after a contest in which petitioner took part, and not appealed from, that deceased was a New York domiciliary.
Respondent, while disagreeing with petitioner as to the meaning and applicability of the treaty (and calling to our attention that petitioner pleaded this same treaty as a basis for relief to him in the probate proceedings), takes her stand firmly on the proposition that the unappealed New York Surrogate’s decree directing probate of the will on a finding after testimony taken that decedent had his domicile in New York is a complete bar to any demand or claim of petitioner (Cromwell v. County of Sac, 94 U. S. 351, 353; Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304, 306; Ripley v. Storer, 309 N. Y. 506, 515). And, respondent points out, this applies generally as against attempts to relitigate jurisdictional questions as well as other kinds of issues (Baldwin v. Traveling Men’s Assn., 283 U. S. 522, 525; Davis v. Davis, 305 U. S. 32; Williams v. North Carolina, 325 U. S. 226, 230; see Vander v. Casperson, 12 N Y 2d 56). *271 But the meaning and application of a treaty is still a question of law which if decided erroneously must be reviewed on appeal, otherwise the judgment is conclusive.
It is the rule that subject-matter jurisdiction otherwise nonexistent may not come into being through waiver or estoppel (Matter of Newham v. Chile Exploration Co., 232 N. Y. 37). However, there is a well-settled exception or proviso that this does not apply when the court had jurisdiction of the general subject matter but a contention is made after judgment that the court did not have power to act in the particular case or as to a particular question in the case (Moore v. McAllister, 216 Md. 497; Taylor Coal Co. v. Industrial Comm., 301 Ill. 381; Lambert v. Yellowley, 4 F. 2d 915; United States v. Ellison, 74 F. 2d 864). In other words the rule that subject-matter jurisdiction cannot be born of waiver, consent or estoppel has to do with those cases only where the court has not been given any power to do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime. In other words, “ subject matter ” does not mean “this case ” but “ this kind of case ” (cf. Matter of Newham v. Chile Exploration Co., 232 N. Y. 37, 42, supra). The Surrogate’s Court of New York County had general subject-matter jurisdiction as to probate of wills and as to the probate of the will of this decedent who had a residence in New York and property there. Petitioner never really took a position different from this in the Surrogate’s Court (he asked the court to rule that the will was “invalid”) although he now tardily asserts that the Surrogate’s jurisdiction extended only to entering an order against the respondent and directing her to return the property to Switzerland and to the Swiss courts. The petitioner seems to be arguing also that he should not be charged with estoppel or waiver because, so he intimates, he did not know that valuable property of the estate had been taken from Switzerland to New York. The record before us, however, proves conclusively that petitioner did know this fact at the time of this New York probate.
We turn to the treaty and petitioner’s argument that article VI is to be taken with all literalness when it says that: “ Any controversy that may arise among the claimants to the same succession, as to whom the property shall belong, shall be decided *272 according to the laws and by the judges of the country in which the property is situated.” Petitioner says that this means that a controversy like the present one must be decided not only according to the laws of Switzerland but by the courts of Switzerland. The only known writings on the subject, four in number, all say in one way or another that the language of article VI does not require that questions as to succession or inheritance must be decided pursuant to the law and by the judges of the country (Switzerland or the United States) in which personal property happens to be physically located at the moment of death (Matter of Schneider, 198 Misc. 1017; Nussbaum, American-Swiss Private International Law, 47 Col. L. Rev. 186,195 et seq.; Vanderbilt L. Rev., Vol. 6, pp. 729-730; Miller, Treaties and Other International Acts of the United States of America, published by the United States Department of State, Vol. 5, Discussion of art. VI at p. 869). All these in one way or another confirm that as to personal property legal domicile at death determines what law is to be applied and what court has jurisdiction. Particularly interesting is Miller’s work which is an official publication of the United States Department of State. Author Miller has given us a complete history of the 1850 treaty. Material at page 869 of his Volume 5 shows that it was recognized- during the treaty negotiations that a literal application of article VI would produce the absurd and undesired effect that if a decedent to whose estate the treaty applied left personal property in both Switzerland and the United States proceedings would be required in both countries with obvious difficulty, delay and expense. As a result of these comments and discussions between the diplomatic representatives of the two countries, narrated by author Miller, the treaty’s language was not changed but there was apparent recognition that the only proper interpretation was that jurisdiction would be in the courts and place of the decedent’s legal domicile. Furthermore, as appears from the Miller text, an earlier draft of article VI specified that the article would apply to both real and personal property, but this was stricken out. The deletion apparently was made because it was recognized that jurisdiction was not to be reposed solely in the courts of the place where the property was physically present (Miller, op. cit., Vol. 5, pp. 892-893, 899-903). Thus, when petitioner came into and took part *273 in the New York County probate proceedings he himself was recognizing the application under the treaty of the conventional domiciliary rule as to personal property.
That part of the order appealed from which affirms the denial of the application to vacate the probate should be dismissed for nonfinality; otherwise the order appealed from should be affirmed, with costs.