OPINION OF THE COURT
Benjamin F. Nolan, J.
Petitioner, the Jewish Child Care Association, a not-for-profit corporation and fee owner of the premises located at 1250 East 229 Street, Bronx, New York, brings this summary proceeding under RPAPL 713 (7) for a judgment removing respondents, the City of New York, the Human Resources Administration, and others, from occupancy of the said premises on grounds that they have continued to remain in possession after their license to occupy the premises was terminated.
The most recent agreement of occupancy authorized petitioner to terminate respondents’ use and occupancy upon 60 days’ written notice. On October 26, 1984, the Jewish Child Care Association served respondent (hereinafter the City) with a written notice terminating the City’s occupancy in 65 days. The City did not remove from the premises in response to the 65-day notice; nor, has it since removed from the premises. Four months after the 65-day notice expired, the Jewish Child *872 Care Association served the City with a 10-day notice to quit, which the City also ignored. As a result, petitioner Jewish Child Care Association brought this summary proceeding for repossession of its property.
Instead of answering the petition, the City brought this prejoinder motion which seeks an order pursuant to CPLR 404, CCA 1002, and CPLR 3211 (a), dismissing the petition for lack of jurisdiction over the subject matter of this summary proceeding on the ground that respondents are tenants, not licensees, and were thus entitled to a 30-day statutory notice to vacate. A further ground that the court also lacked in personam jurisdiction because of the manner of service of the process was subsequently withdrawn.
CCA 1002 makes CPLR 3211 applicable in the Civil Court. CPLR 3211 (a) includes lack of subject matter jurisdiction as a ground upon which a party may move to dismiss a cause of action. CPLR 404 authorizes a respondent in a special proceeding to raise an objection in point of law by a motion to dismiss the petition, made upon notice within the time allowed for answer. If the motion is denied, the court may permit the respondent to answer upon such terms as are just.
The City entered into initial occupancy after accepting the following offer of use and occupancy contained in a letter which the Jewish Child Care Association wrote to the Commissioner of Social Services of the City of New York on May 26, 1977: "The Jewish Child Care Association of New York is concerned that the City’s fiscal crisis may have had an adverse impact on the delivery of needed child care services in the City particularly in regard to your Department’s child care program. The Jewish Child Care Association, therefore, proposes to aid the City by herewith offering to the City, as a gift, the use and possession of our building, Edenwald Center at 1250 East 229 Street in the Bronx, for a period ending on November 30, 1981, to be used by the City as a residential facility for dependent, neglected and other children in connection with your Department’s Special Services for Children program. In addition, as part of this gift, the Jewish Child Care Association offers to contribute toward the operating cost of such a child care program in Edenwald Center the sum of $40,000 for each year that the program continues, commencing from the time of the City’s initial occupancy”.
Continuing, the letter specified that "this gift is subject to the following conditions.” That, "although the City is to pay *873 no rent or other payment,” the City would bear all costs of maintenance. That, additionally, the Jewish Child Care Association would "at its own expense keep in force a fire insurance policy at the cost of $1,400 annually” which would "be a credit against the $40,000” to be contributed annually by the Jewish Child Care Association. And further, that "it is the intent of this gift that the relationship between the City and the Jewish Child Care Association in regard to the City’s use and occupancy of the premises for the operation of child care programs and the obligations of one to the other be as if the City were the owner with no obligation on the Jewish Child Care Association to maintain the premises or be liable for anything during the City’s use and occupancy of the premises”.
The City accepted the gift and entered into occupancy, and conducted its child care program at the premises for the balance of the term. By letter of November 10, 1981, the Jewish Child Care Association granted the City’s request for continued use and occupancy, providing that it would continue "under the same terms and conditions except that having thus far contributed $120,000 toward the operating cost of the City’s program (the Jewish Child Care Association) shall no longer make any payments toward the said operating costs for past or future periods of time.”
Before the Jewish Child Care Association terminated the City’s occupancy, the City negotiated with the Association to purchase the property. The City negotiator accepted the offering price but when requisite budget approval took too long the Jewish Child Care Association entered into a contract to sell the property to Rome Knitting Mills, Inc. Thereafter, the City attempted to purchase the property from Rome Knitting Mills, Inc. (as the contract vendee), but Rome’s demand was so high that the City rejected it as excessive and then initiated a proceeding under New York City Charter § 197-c to acquire the property in condemnation. Accordingly, should its motions to dismiss be denied, the City requested as alternative relief that this court stay the summary proceeding until the condemnation process is completed.
The Attorney-General of the State of New York — although not a party or possessor of any formal standing in this summary proceeding — filed an affidavit on this motion in support of the City stay application, but for a different reason, namely, because he is the statutory representative of ultimate and indefinite charitable beneficiaries under EPTL 8-1.1 (h) in *874 a New York County Supreme Court proceeding brought by the Jewish Child Care Association against the City seeking an order approving or disapproving its contract of sale to Rome Knitting Mills, Inc. Approval by a court of competent jurisdiction is an express condition of the contract of sale, and is also required under Not-For-Profit Corporation Law § 511 when as here a not-for-profit corporation seeks to dispose of a substantial asset. The Attorney-General’s affidavit claims that since the petition in the Supreme Court raises a substantial question whether the Jewish Child Care Association is receiving fair market value from the purchaser, Rome Knitting Mills, Inc., there should be a stay of this summary proceeding until final disposition of the Supreme Court proceeding, because "if the contract of sale is disapproved and invalidated in its present form, then the summary proceeding initiated by Rome Knitting Mills, Inc. (the contract vendee) will be moot as there will be no contract to enforce.”
However, the Attorney-General’s reasoning is both factually and logically in error. The fact is that Rome Knitting Mills, Inc., did not initiate this summary proceeding and ,is not a party to it. While the summary proceeding may well have been brought for the incidental benefit of Rome Knitting Mills, Inc., it is misleading to say that it was initiated by Rome when it was not. Nor, does it logically follow that if the contract is disapproved and invalidated by the Supreme Court, the Jewish Child Care Association would be deprived of its right to repossess its property in a summary proceeding for reasons having absolutely nothing to do with that contract of sale.
While condemnation, on the other hand, would undoubtedly render moot any pending summary proceeding, and would additionally render the proposed sale incapable of performance by the Jewish Child Care Association, condemnation is not imminent and is by no means certain to happen. The District Community Planning Board has already handed the City a setback in the first step of the condemnation process by voting unanimously (19-0) to disapprove the proposed condemnation. While this adverse expression of community opposition is "advisory” only, it will undoubtedly increase the City’s burden in the public hearings to follow before the City Planning Commission. And even if the City is successful there, it will be an adverse factor in the final consideration by the Board of Estimate — all of which represents considerable delay *875 incompatible with the summary nature of a summary proceeding.
Accordingly, since justification for the grant of an indefinite stay of this summary proceeding has not been sufficiently shown in the papers on this motion, so much of the City’s prejoinder motion as seeks such a stay is denied.
Whether the City’s occupancy was a license or a lease depends upon the intent of the parties, either expressed, or as gleaned from an objective reading of the written instruments. And, this court would not lack subject matter jurisdiction even if the occupancy agreements were found to be leases rather than licenses. RPAPL article 7 provides for repossession from a tenant under section 711 and from a license under section 713. The Civil Court therefore has subject matter jurisdiction of " 'this kind of case’ ” (Matter of Rougeron, 17 NY2d 264, 271 [1966], cert denied 385 US 899). If there is a defect of form, it may be corrected in an amended petition. If there is a defect of notice, such defect may justify dismissal of the petition for that reason but not because this court lacks subject matter jurisdiction.
The occupancy at bar was not a tenancy. A landlord does not say to a prospective tenant: "Here, use my land and the buildings on it rent-free. I give you the use and occupancy of it as a gift because you are in a budget crisis. And, on top of this, I will contribute $40,000.00 every year of your occupancy to help you in your use of my property. All you have to do is pay all expenses of your use and occupancy so it will not cost me anything.” And, in addition, "I will pay $1,400 a year as a premium for fire insurance.” While the agreements contain some terms found in leases, "consideration” to the Association for its grant of use and occupancy — indispensible to any finding that these agreements were leases — is not expressly indicated. Nor, can consideration be implied, as the City argues, because the City paid for expenses and upkeep. These are normal obligations of use, whether by a tenant or a licensee. The fact that some minimal taxes continue to be assessed against this normally tax-exempt property does not supply a realistic consideration. The City paying taxes to itself is hard to imagine. Such implied consideration, if indeed it is consideration at all, would be so minimal as to be insignificant.
Neither of the occupancy agreements was labeled a "lease”, nor were they ever referred to as "leases” in any correspon *876 dence between the City and the Jewish Child Care Association. The agreements studiously avoided the word "tenant”, and pointedly used the word "occupancy” instead of "tenancy”. The Jewish Child Care Association referred to the occupancy as a "gift”, and the Deputy Commissioner of the Human Resources Administration wrote the Association on June 28, 1977, that the Mayor of the City of New York accepted this "welcome gift.” But, most significant of all, is a letter of March 27, 1985 from the Deputy Administrator of the Human Resources Administration to the City Planning Commission submitting the City’s condemnation application, in which he referred to the occupancy as a "license.” This characterization of the occupancy was made by a high-ranking official of the City agency which is party respondent with the City in this summary proceeding — an official of sufficient stature to bind his agency and the City to this view of the nature of the occupancy. It is therefore difficult to give credence to the City’s characterization of the occupancy as a "lease” after this summary proceeding was initiated, when the City publicly and officially called it a "license” before the advent of litigation. Furthermore, New York City Charter § 67 (1) requires approval by the Board of Estimate of "leases of property to the city for city use.” There was no such approval obtained here. A municipal contract which violated such an express statutory mandate would be invalid (Emerman v City of New York, 34 AD2d 901 [1st Dept 1970]).
While the foregoing would appear to render moot any consideration of the City’s contention that as a holdover "tenant” it should have received a 30-day notice to quit under Real Property Law § 232-a, it is worth pointing out that even if the City occupied the premises as a "tenant”, it would not have been entitled to any more notice to terminate than it received here.
The letters of initial offering and extension contained all of the terms and conditions applicable to the City’s use and occupancy. Each was an offer which the City merely accepted. There was no modification of or addition to the terms of either offering. But, whereas the initial occupancy was for a definitely stated term ending on November 30, 1981, the extension did not specify a definite termination date but provided instead that the term would end 60 days after either side gave written notice to the other that it was exercising its option to terminate in 60 days. Accordingly, when on October 26, 1984, petitioner Jewish Child Care Association served the City with *877 written notice that under terms of the extension letter of November 10, 1981 its occupancy was to terminate in 65 days, the said notice brought the term of the renewal occupancy to an end on December 31, 1984.
The City complains nevertheless that it was prejudiced by receiving a 10-day notice to quit instead of a 30 days’ notice it thinks it would have been entitled to receive if the Jewish Child Care Association brought this summary proceeding to evict it as a holdover tenant under RPAPL 711. However, the City’s assumption is in error. The 65-day notice the City received under the occupancy agreement brought the occupancy term to its end. When a tenancy is terminated by its own terms, no additional notice need be given (Rasch, New York Landlord & Tenant, Summary Proceedings § 1018 [2d ed]). To the same effect, the Appellate Term, First Department, in Reagan v Fosdick (19 Misc 489, 491) said: "Where the term is definitely fixed the tenancy expires ex vi termini, and the giving of notice to quit is a work of supererogation which furnishes no rights and creates no liabilities.”
There is no 30-day notice or any other kind of notice requirement expressed in RPAPL 711. However, Real Property Law § 232-a requires the service of a notice of "at least” 30 days preliminary to the institution of a summary proceeding to evict a "monthly tenant, or [a] tenant from month to month”. Here, the City was neither a "monthly tenant” nor a "tenant from month to month”. In Mullman v Hogan (121 Misc 2d 719-720 [1983]), the court said: "Section 232-a of the Real Property Law is patently inapposite since, whatever respondent’s status, he was certainly not a month-to-month tenant * * * Rather he was a tenant holding over after the termination of his lease pursuant to its own terms * * * Accordingly, no further notice of termination was necessary”.
Therefore, upon consideration of all of the foregoing papers, attachments and admissions contained therein, the respondent City’s motion to dismiss the petition is in all respects denied. Since there are no triable issues of fact, this court can conceive of no basis for exercising its discretion under CPLR 404 (a) to now permit respondent City to answer and continue litigation of the issues of law finally disposed of on this motion. In fact, to the contrary, where — as here — the motion raised no triable issues of fact, CPLR 409 (b) mandates the court to make a summary determination upon the pleadings, papers and admissions as on a motion for summary judgment (1 Weinstein-Korn-Miller, NY Civ Prac ¶ 409.03 [summary *878 determination]; and see, Lincoln Sq. Apts, v Davis, 58 Misc 2d 292, affd 64 Misc 2d 859 [1969], where the Appellate Term, First Department, affirmed such a summary judgment determination under CPLR 409 [b]). Accordingly, respondent City’s motion is not only denied, as aforesaid, but the petitioner Jewish Child Care Association shall also have summary judgment of possession. Issuance of the warrant shall be stayed for 30 days.