RENDERED: AUGUST 23, 2007
TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000809-DG

BONNIE JEAN NORDIKE, NOW HOLCOMB                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                                          2004-CA-02242
WARREN CIRCUIT COURT NO. 02-CI-001313


MICHAEL D. NORDIKE                                       APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

AFFIRMING


This case is on discretionary review of the Court of Appeals' decision affirming the Warren Circuit Family Court's denial of a motion to take jurisdiction over a foreign child support decree. For reasons other than those stated by either of the lower courts, the Court of Appeals is affirmed.

## I. Background

Bonnie Jean Holcomb (formerly Nordike) and Michael D. Nordike were married and lived for a number of years in Kansas, where Nordike was stationed in the military. During that time, they had one child, a daughter. A divorce decree was entered in Sedgwick County, Kansas on June 20, 1997, giving the parties joint custody of their daughter, but naming Nordike the residential parent, to have 51% of the child's time, partly in order to allow her to remain in the same school district. Neither party was to

pay support, though each was to bear one-half of any child care expenses and "maintain sustenance and clothing for the child while in each home."

Apparently this arrangement worked well until some time in 2000, when Nordike voluntarily transferred to another base in Ohio. Holcomb moved the Kansas court to modify the shared custody agreement so that their daughter remained with her in Kansas. In an order dated October 5, 2000, the Kansas Court, noting the multiple moves Nordike was likely to make given his career choice, named Holcomb the "primary residential custodian."

In June 2001, Holcomb and the daughter moved to Bowling Green, Kentucky. Nordike moved the Kansas court to change custody because of the move, and Holcomb asked the court to leave residential custody with her. The Kansas court ruled that the move to Kentucky was not a "major change of circumstances" affecting the child or the parties so as to require a change in custody and denied Nordike's motion in an order signed July 27, 2001.

In a later order, dated September 11, 2001, the Kansas court addressed child support, ordering Nordike to pay $267.00 per month and 57% of any unpaid medical expenses. The court further required the support to be paid through the Kansas Payment Center in the same manner that payments are made in Kentucky.

Later that year, both parties filed motions in the Kansas court, Nordike to change custody, and Holcomb "to change jurisdiction of this case from Kansas to Kentucky." In an order signed July 2, 2002, the Kansas court chose not to address Nordike's custody motion, and instead granted Holcomb's motion to "transfer" the case to Kentucky. The court found that "Kentucky is currently the home state" of the daughter, because she had lived here for over a year, and that Kansas was not a convenient forum for either

2

party as neither of them now lived there. The court concluded by purporting to transfer jurisdiction of "this case" to Kentucky.

Procedurally, the next step was to register the Kansas decree in Kentucky. In August 2002, Holcomb filed a petition "PURSUANT TO THE UCCJA" (according to its heading) asking the Warren Circuit Family Court to register the decree and accept jurisdiction to resolve issues concerning "custody, visitation, and/or support of the minor child." (The UCCJA was the Uniform Child Custody Jurisdiction Act; since the beginning of the appellate process, the UCCJA has been repealed and replaced by the substantially similar Uniform Child Custody Jurisdiction and Enforcement Act, or UCCJEA.) Copies of the Kansas court's orders related to custody and child support and the order "transferring" jurisdiction to Kentucky were attached to the petition. Nordike entered a special appearance to challenge registration of the decree, citing the federal Soldiers and Sailors Civil Relief Act and several provisions of Kentucky's Uniform Interstate Family Support Act (UIFSA). Official copies of the Kansas court's orders, along with the initial divorce decree, were also placed in the record. After some delay, the parties entered into an Agreed Order in Warren Circuit Family Court, signed April 24, 2003, that, according to its heading, transferred jurisdiction to the Warren Circuit Family Court pursuant to the UCCJA. The body of the Agreed Order noted that petition for registration was accepted and that "all future matters pertaining to custody or visitation of this minor child shall be brought within the Warren Circuit Court . . . ." Only jurisdiction related to custody and visitation was addressed in the order.

After entry of the order, Nordike moved the family court to modify the Kansas orders to transfer custody to him. After a hearing, the family court found the proof insufficient to modify custody, but it did modify visitation as Nordike was then living in

3

Colorado Springs, Colorado. Again, only custody and visitation were addressed in the order. A flurry of visitation disputes then began, with Nordike repeatedly availing himself of the Kentucky forum.

Then on September 29, 2003, Holcomb sent Interrogatories and Requests for Production to Nordike asking for extensive financial information, including banking and tax records. Nordike objected on the basis that the Warren Circuit Family Court had jurisdiction only over custody and visitation, and that the requested financial information was not relevant to those issues. Holcomb filed a motion to compel, which the family court overruled, stating that it was "unclear as to whether or not the interrogatories sought or the documents requested are relevant to the issue of joint custody and/or visitation, which were the only issues referred to this court under the Agreed Order entered on April 24, 2003." (Emphasis added).

Holcomb then moved the trial court to amend the April 24, 2003 Agreed Order to state that jurisdiction over all issues of child support were transferred to Warren Circuit Family Court, claiming that child support was mistakenly omitted from the original order. Nordike entered a special appearance to deny any mistake and to assert Kentucky's lack of jurisdiction over child support. The trial court denied Holcomb's motion in an order signed October 19, 2004, stating that it had not previously accepted jurisdiction over child support matters and lacked jurisdiction to do so pursuant to UIFSA, specifically KRS 407.5201, because it had no personal jurisdiction over Nordike.

Holcomb appealed this order to the Court of Appeals, which affirmed. The court's opinion distinguished the jurisdiction required to modify another state's custody orders from that for support orders, noting that custody and support are addressed in separate statutory schemes (custody in the UCCJA, now the UCCJEA, and support in

4

the UIFSA). The court's analysis focused on the various jurisdictional statutes: KRS 407.5202, which addresses personal jurisdiction over a non-resident; KRS 407.5613, which governs the power to modify support decrees where all the parties are Kentucky residents; and KRS 407.5611, which allows modification of a foreign child support order that has been registered in Kentucky only where the parties consented in writing in the issuing state to modification of the decree by the courts of this state, or where, among several requirements, the petitioner is a nonresident. The court held that Nordike was not subject to personal jurisdiction, that KRS 407.5613 did not apply because he was not a Kentucky resident, and that neither aspect of KRS 407.5611 applied because Holcomb, as the petitioner, was a Kentucky resident, and the Kansas order purporting to transfer jurisdiction to Kentucky made no reference to child support and therefore did not reflect the parties' consent. The court concluded by stating specifically that both personal jurisdiction and subject-matter jurisdiction were lacking.

This Court granted discretionary review.

## II. Analysis

Both parties describe this case as one that revolves around the issue of jurisdiction. Holcomb argues that Kentucky has child support jurisdiction under KRS 407.5201 because Nordike consented to the jurisdiction of this state, he has availed himself of this forum for custody and visitation matters, and the child resides here due to his acts or directives. Nordike counters that the child does not reside here due to his acts or directives, and that while the Warren Circuit Family Court acquired jurisdiction over custody and visitation under the former UCCJA, it cannot have jurisdiction under UIFSA because the scope of his consent to Kentucky jurisdiction was specifically limited to custody and visitation, which is all he has ever addressed in Kentucky.

5

The difficulties with both sets of arguments are numerous. For example, the record could be read narrowly to indicate that Nordike only agreed that Kentucky could address custody and visitation, since all the pleadings relating to registering the Kansas decree specifically state they are being made pursuant to the UCCJA, which deals with custody and visitation issues alone. Conversely, there is an argument that the Kansas court intended to "transfer" the entire case, including support matters, even though the factors listed in its transfer order address only elements that go to jurisdiction over custody and visitation. The most pressing question in resolving this conflict is whether the Kansas order constituted a written consent to allow Kentucky to modify the support decree. The answer to that also is unclear because the meaning and scope of the order, specifically the part that states it was "APPROVED" by each party's attorney, was not addressed by the trial court and cannot be discerned from the record.

In fighting over these issues, the parties are attempting to resolve, as the Court of Appeals described them, issues of both personal and subject-matter jurisdiction. While the parties are correct that this case is ultimately about jurisdiction, neither has articulated the correct approach to the subject given the procedural posture of the case. Nor, for that matter, did the family court or the Court of Appeals, though both reached the correct result. However, it is not necessary at this point in the case to analyze whether Nordike consented to jurisdiction or caused the child to reside in Kentucky, or to determine whether Nordike was subject to personal jurisdiction. This is because the type of jurisdiction at issue is far more fundamental than that addressed by the parties and the lower courts.

Jurisdiction, broadly defined, is the power of the court to decide an issue in controversy. Black's Law Dictionary 867 (8th ed. 2004). The courts' power to inquire

6

into facts, apply the law, make decisions, and declare judgment between parties is both

constrained by and a function of their jurisdiction.  For example, under Kentucky law,

some matters are constitutionally assigned through the Judicial Article to be heard by

judicial power:

> It is fundamental that a court must have jurisdiction before it has authority
> to decide a case. Jurisdiction is the ubiquitous procedural threshold
> through which all cases and controversies must pass prior to having their
> substance examined. So fundamental is jurisdiction that it is the concept
> on which first-year law students cut their teeth.

Wilson v. Russell, 162 S.W.3d 911, 913 (Ky. 2005).  Despite its preeminent place in the

legal canon, "[t]he word 'jurisdiction' is more easily used than understood."

Commonwealth, Dept. of Highways v. Berryman, 363 S.W.2d 525, 526 (Ky. 1963).

This is because the "term [is] too often used in a loose fashion," Milby v. Wright, 952

S.W.2d 202, 205 (Ky. 1997), with the single word being used to describe several related

but nevertheless very different concepts.  There are actually three separate types of

Often, discussions of jurisdiction concern subject-matter jurisdiction, or the court's power to hear and rule on a particular type of controversy. Id. Subject matter jurisdiction is not for a court to "take," "assume," or "allow." "'[S]ubject-matter jurisdiction cannot be born of waiver, consent or estoppel,'" but it is absent "'only where the court has not been given any power to do anything at all in such a case . . . .'" Duncan v. O'Nan, 451 S.W.2d 626, 631 (Ky. 1970) (quoting In Re Estate of Rougeron, 17 N.Y.2d 264, 271, 217 N.E.2d 639, 643 (N.Y. 1966)). A court either has it or it doesn't, though admittedly there are times when more than one court may have subject matter jurisdiction or it is difficult to determine which court does.

"Finally there is jurisdiction over the particular case at issue, which refers to the authority and power of the court to decide a specific case, rather than the class of cases over which the court has subject-matter jurisdiction." Milby, 952 S.W.2d at 205. This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired. "[A]lthough a court may have jurisdiction over a particular class of cases, it may not have jurisdiction over a particular case at issue, because of a failure by the party seeking relief to comply with a prerequisite established by statute or rule." Petrey v. Cain, 987 S.W.2d 786, 788 (Ky. 1999). Jurisdiction over a particular case can perhaps be the most difficult of the jurisdictional ideas, as it also includes, or at least relates to, concepts such as ripeness and failure to state a claim, which are usually discussed in terms of their jurisdictional effect, although without specific reference to particular-case jurisdiction. E.g., Doe v. Golden & Walters, PLLC, 173 S.W.3d 260, 275-76 (Ky. App. 2005) ("Because the Appellants' claims were filed before they were ripe, the circuit court has no jurisdiction over the instant case.").

8

It is this third notion of jurisdiction that the parties and lower courts have failed to address. That this is a serious problem becomes apparent only when reviewing the procedural history of this case, which reveals that the Kansas child support decree has not been registered in this state, nor has a motion for modifying that decree ever been filed. The April 24, 2003 agreed order from the Warren Circuit Family Court allowed registration only of the custody and visitation aspects of the Kansas orders, despite the fact that Holcomb's initial petition also asked for the support aspect to be registered. Holcomb's subsequent motion sought to amend the agreed order "so that she may re-visit the issue of child support in this jurisdiction." Essentially, the motion asked the family court only to declare that it had jurisdiction over child support, so Holcomb could at some time in the future ask that support be modified.

The problem with this is that UIFSA limits the power of a circuit court to act once a child support decree has been issued by another state. The available options are (1) registration and enforcement of a decree as it exists, KRS 407.5201 - .5608, and (2) registration and modification of the decree, KRS 407.5609 - .5614. In both situations, the petitioner must ask the court to do something with the decree by actively seeking registration and either enforcement or modification of it. There is no provision that allows a party—prior to seeking to register and then enforce or modify a decree—to ask the court to declare whether the requirements of either set of statutes has been met. The most germane example are the requirements that must be met in order to modify a decree under KRS 407.5611, namely, proof that the petitioner is not a resident or that the parties consented in the issuing state, in this case, Kansas. On the filing of a motion or petition for modification, a court would be required to address those specific requirements before reaching the merits of the motion. But the question of the court's

9

authority to modify child support does not arise until it is actually put in dispute by the motion.

This is why a court cannot "transfer" jurisdiction to itself, which is what Holcomb's motion asked the Warren Circuit Family Court to do. Asking the family court to amend an agreed order specifically addressed to custody and visitation issues so as to "transfer" jurisdiction over all issues of support is tantamount to asking the court to advise whether it will entertain a motion for modification of support before the motion is made. That determination is not ripe absent a motion to modify. "'[U]nless and until . . . some demand [is] made . . . , there is no justiciable issue before the Court for determination. The Court will not render advisory opinions or consider matters which may or may not occur in the future.'" Pursley v. Pursley, 144 S.W.3d 820, 827 n. 27 (Ky. 2004) (quoting Richardson v. Richardson, 598 S.W.2d 791, 795 (Tenn. Ct. App. 1980)). It is a fundamental tenet of Kentucky jurisprudence that courts cannot decide matters that have not yet ripened into concrete disputes. Courts are not permitted to render advisory opinions. Freeman v. Danville Tobacco Board of Trade, Inc., 380 S.W.2d 215 (Ky. 1964); Commonwealth ex rel. Watkins v. Winchester Water Works Co., 303 Ky. 420, 197 S.W.2d 771 (1946).

There is a temptation in this case to suggest that Holcomb's motion was analogous to a Declaratory Judgment action, in that she sought to have jurisdiction declared before she proceeded. However, such a suit still requires that "an actual controversy exists . . . ." KRS 418.040. And as the Court has noted previously,

"The existence of an actual controversy respecting justiciable questions is a condition precedent to an action under the [Declaratory Judgment Act]. The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered."

Veith v. City of Louisville, 355 S.W.2d 295, 297 (Ky. 1962) (quoting Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S.W.2d 481, 483 (1930)) (citations omitted in original). The question of a court's jurisdiction by itself, much like any dispute over a pure question of law not grounded in an actual claim, simply is not "a present actual controversy." That language contemplates a conflict over the substantive rights of the parties. It is this distinction between declaring rights and not declaring the law in a vacuum that allows the Declaratory Judgment Act to pass constitutional scrutiny. See Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S.W.2d 481, 483 (1930). Jurisdiction can only be addressed within an action itself, whether initiated through a complaint or a motion requesting relief, neither of which has been made in this case.

The issue of ripeness has not been raised heretofore, but is an element of a justiciable motion or claim. "Questions that may never arise or are purely advisory or hypothetical do not establish a justiciable controversy. Because an unripe claim is not justiciable, the circuit court has no subject matter jurisdiction over it." Golden & Walters, PLLC, 173 S.W.3d at 270 (citation footnotes omitted); Ky. Const. § 112(5). In this case, the motion in question was not justiciable because it made no substantive request for relief. Thus, it was proper for the Warren Circuit Family Court to deny the motion, although the court's analysis of personal jurisdiction was premature (in light of the foregoing discussion) and not necessarily correct.

Moreover, given that none have been filed to date, it is possible that a motion for child support modification may never arise in Kentucky, even if the courts were to have

11

jurisdiction. This further underscores the necessity of waiting for such a motion to be made. Until that time, there is no question to be answered about the existence of the trial court's jurisdiction.

### III. Conclusion

There being no justiciable controversy stated in the motion that is on appeal, the decision of the Warren Circuit Family Court to deny the motion was proper, and the Opinion of the Court of Appeals affirming the trial court is hereby affirmed.

All sitting. Lambert, C.J.; Cunningham, Minton, Noble, Scott and Schroder, JJ., concur.

COUNSEL FOR APPELLANT:

Matthew J. Baker
911 College Street, Suite 200
Bowling Green, Kentucky  42101


COUNSEL FOR APPELLEE:

Kenneth A. Meredith, II
1029 State Street
PO Box 194
Bowling Green, Kentucky  42102-0194