Courtney G. ROBERTS, Appellant,

v.

Eric BEDARD, Appellee.

No. 2011–CA–000212–ME.

Court of Appeals of Kentucky.

Sept. 16, 2011.

Discretionary Review Denied by
Supreme Court Feb. 15, 2012.

John Allen Taylor, Louisville, KY, for appellant.

W. Stokes Harris, Jr., Lexington, KY, for appellee.

Before CLAYTON, STUMBO, and THOMPSON, Judges.

*OPINION*

CLAYTON, Judge:

Courtney G. Roberts appeals the Fayette Family Court's order dismissing her

motion to modify a child support order, which was originally entered in Florida. The family court dismissed the motion holding that, although the court may have personal jurisdiction over Bedard, it did not have subject-matter jurisdiction over a proceeding to modify the order. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Courtney G. Roberts and Eric Bedard had a child together on July 8, 2005. A paternity judgment was entered in the state of Florida on December 5, 2006. Courtney moved to Kentucky in 2007, and on April 29, 2008, she filed a Notice and Affidavit of Foreign Judgment Registration of the Florida paternity judgment in the Fayette Family Court. Then, on July 2, 2008, Courtney filed a petition and motion to modify the child support.

At the family court hearing, Bedard argued by special appearance that he was not a Kentucky resident, had not been served in this state, and that none of the criteria in Kentucky Revised Statutes (KRS) 407.5201 were met and, therefore, the family court did not have jurisdiction. Roberts maintained that she was in Kentucky as a result of Bedard's directives and, as a result, KRS 407.5201(5) conferred personal jurisdiction on Bedard.

On October 15, 2008, the Fayette Family Court dismissed that action, finding that Roberts was not in Kentucky at the directives of Bedard and, consequently, it did not have personal jurisdiction over Bedard. After Roberts appealed this decision, the Court of Appeals, on April 6, 2010, affirmed the family court's decision. The Court noted in its decision that "any increase in child support requested by the obligee must be sought in the state of residence of the obligor ... [since] the purpose of UIFSA[1] is to prevent a party from obtaining a local advantage by requiring that the moving party must be a nonresident of the state where the motion is filed." Since Bedard was a nonresident of Kentucky and Roberts was a resident of Kentucky, she could not make a motion to modify this foreign child support order in Kentucky.

In the present case, Roberts filed a new motion to modify the child support order on July 7, 2010. And Bedard, who was in Kentucky to spend time with the child, was personally served on July 13, 2010. But the Fayette Family Court, on January 7, 2010, dismissed the new motion to modify the child support order.

In its opinion and order, the family court observed that, while under KRS 407.5201(1) a court *may* exercise personal jurisdiction over a nonresident who has been personally served in this state, it must also have subject-matter jurisdiction under the requirements of KRS 407.5611 before it can modify a child support order from another state. Additionally, the family court held that, according to KRS 407.5611, a requirement for subject-matter jurisdiction to modify a foreign child support order is that the party seeking modification must not reside in this state. As with the previous case between the parties, since Roberts resides in Kentucky and Bedard does not, Kentucky does not have subject-matter jurisdiction to modify the Florida child support order. And, the family court disagreed with Roberts's contention that the Full Faith and Credit for Child Support Orders Act (hereinafter "FFCCSOA"), 28 United States Code (U.S.C.) § 1738B, preempts the subject-matter jurisdiction requirements of UIFSA and allows the family court to modify

1. Uniform Interstate Family Support Act

the child support order. Roberts appeals from this decision.

In this appeal, Roberts disputes the family court decision by arguing that the family court had personal jurisdiction over Bedard because he was personally served in Kentucky; that a foreign judgment does not require re-registration; that FFCCSOA preempts UIFSA and provides the family court subject-matter jurisdiction; and, lastly, that the family court should have struck Bedard's responsive motion because it was untimely under the local court rules.

Bedard counters these arguments by noting that the family court properly ruled that personal service of this new motion did not revive Roberts's *dismissed* action since federal law requires registration in a state that had personal jurisdiction at the time of the registration; that federal and state law both require jurisdiction in order to modify a foreign child support order and, thus, preemption is a nonissue; and, finally, that the family court appropriately applied the local rules regarding the time allowed for motions.

## ANALYSIS

■ Here, the primary contested issue involves jurisdiction. Since the issue of jurisdiction is a matter of law, we will review it de novo. See *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000). The Kentucky Supreme Court addressed the issue of jurisdiction related to UIFSA in *Nordike v. Nordike*, 231 S.W.3d 733 (Ky.2007). Therein, the Court described jurisdiction as follows: "[j]urisdiction, broadly defined, is the power of the court to decide an issue in controversy." *Id.* at 737, citing *Black's Law Dictionary* 867 (8th ed.2004). The Court then went on to discuss three types of jurisdiction—personal, subject-matter, and jurisdiction over a particular case.

With regard to personal jurisdiction, the Court stated:

First, there is personal jurisdiction, or "the court's authority to determine a claim affecting a specific person." *Milby [v. Wright]*, 952 S.W.2d [202] at 205 [ (Ky.1997) ]. When the question is whether the court has the power to compel a person to appear before it and abide by its rulings, this is a question of personal jurisdiction. Given the mobile world we live in, personal jurisdiction often is difficult to obtain, which has led each state to the development of long-arm statutes that extend personal jurisdiction to nonresidents. KRS 407.5201 is such a statute.

*Id.* Next, the Court discussed subject-matter jurisdiction:

Often, discussions of jurisdiction concern subject-matter jurisdiction, or the court's power to hear and rule on a particular type of controversy.... Subject matter jurisdiction is not for a court to "take," "assume," or "allow." " '[S]ubject-matter jurisdiction cannot be born of waiver, consent or estoppel,' " but it is absent " 'only where the court has not been given any power to do anything at all in such a case....' " *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970) (quoting *In Re Estate of Rougeron*, 17 N.Y.2d 264, 271, 270 N.Y.S.2d 578, 217 N.E.2d 639, 643 (N.Y. 1966)). A court either has it or it doesn't, though admittedly there are times when more than one court may have subject matter jurisdiction or it is difficult to determine which court does.

*Id.* at 737–38. Lastly, the Court addresses jurisdiction over a particular matter and says:

Finally there is jurisdiction over the *particular* case at issue, which refers to the authority and power of the court to

decide a *specific* case, rather than the class of cases over which the court has subject-matter jurisdiction. *Milby*, 952 S.W.2d at 205. This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired.

*Id.* Here, the disputed jurisdiction revolves around the first two types, that is, whether the family court had personal jurisdiction over Bedard and subject-matter jurisdiction over the motion to modify the Florida child support order. Adding to the complexity of the issue is the interrelationship of the UIFSA statutes and the FFCCSOA statutes.

Therefore, the issues before this Court are as follows: whether the family court had personal jurisdiction over Bedard in this current motion for child support; whether the family court properly ruled that it did not have subject-matter jurisdiction because the FFCCSOA requires that the foreign judgment be registered prior to personal service of an obligor or, in this case, whether the foreign order was registered appropriately under the FFCCSOA; whether the FFCCSOA preempts UIFSA and, thus, gives the family court subject-matter jurisdiction; and, finally, whether the family court should have struck Bedard's responsive motion because it was untimely under its local court rules.

█ Our analysis starts with the issue of personal jurisdiction. As noted in the January 7, 2011, family court opinion, under KRS 407.5201(1) a court *may* exercise personal jurisdiction over a nonresident if the individual is personally served with summons, or notice, within this state. Therefore, the family court correctly determined that it could have exercised personal jurisdiction over Bedard in the cur-

rent action since he was personally served in Kentucky.

The complexity, however, lies with the issue of subject-matter jurisdiction, which the court must have. In the January 7, 2011, order, the family court opined as follows:

According to KRS 407.5611, one of the requirements for subject matter jurisdiction to allow a Kentucky court to modify a child support order issued in another state that has been registered in this state is that the petitioner who seeks modification not reside in this state. Because Courtney resides in Kentucky and Eric does not, Kentucky does not have subject matter jurisdiction to modify the Florida child support order.

At this juncture, we take a look at the pertinent provisions of KRS 407.5611, titled "[m]odification of child support order of another state," which states:

(1) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if KRS 407.5613 does not apply and if after notice and hearing it finds that:

(a) The following requirements are met:

1. The child, the individual obligee, and the obligor do not reside in the issuing state;

2. A petitioner who is a nonresident of this state seeks modification; and

3. The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(b) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consent

with the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order.

Before addressing the statute with specificity, we observe that KRS 407.5613, which is titled "[j]urisdiction to modify child support order of another state when individual parties reside in this state," is not implicated. Hence, in order to ascertain whether this foreign order may be modified in Kentucky, we direct our attention to the above-cited provisions of KRS 407.5611.

Certainly, the case at hand meets the first provision in KRS 407.5611(1)(a)(1), which is that "[t]he child, the individual obligee, and the obligor do not reside in the issuing state[.]" Neither Roberts, Bedard, nor the child live in Florida. The second provision requires that the "petitioner who is a nonresident of this state seeks modification[.]" KRS 407.5611(1)(a)(2). Here, Roberts, the moving party, resides in Kentucky and, therefore, does not meet the requisites of the statute. A resident may not move for modification of a foreign (Florida) order in Kentucky. This factor renders KRS 407.5611(1)(a)(3) irrelevant, that is, whether Bedard was personally served in this state. The three provisions are joined by "and." As is the case in any issue of statutory construction, courts construe meaning "to ascertain and give effect to the intention of the Legislature[.]" *Moore v. Alsmiller*, 289 Ky. 682, 160 S.W.2d 10, 12 (Ky.App.1942). In so doing, KRS 446.080(4) mandates that words and phrases are construed "according to the common and approved use of language[.]" Here, the legislature's usage of the word "and" demonstrates that its intent was to make all three provisions necessary.

█ In addition, we also agree with the Fayette Family Court that the FFCCSOA,

28 U.S.C. § 1738B, does not preempt the subject-matter jurisdiction requirements of UIFSA. Roberts argues that FFCCSOA, 28 U.S.C. § 1738B(e), which also addresses authority to modify foreign child support orders, preempts Kentucky's UIFSA statutes:

> (e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—
>
> (1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
>
> (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or
>
> (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

28 U.S.C. § 1738B(e). Comparing the federal statute with KRS 407.5611 (see above), there are no real distinctions between federal and state law. But 28 U.S.C. 1738B(e) only allows a court of one state to modify an order of another state if "the court has jurisdiction to make such a child support order pursuant to subsection (i)[.]" The pertinent subsection states:

> Registration for modification.—If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

28 U.S.C. § 1738B(i). Although Roberts initially registered the child support order in Kentucky during April 2008, Kentucky had no jurisdiction over Bedard at that time. The plain meaning of the above statute says that the order must be registered in a State "with jurisdiction over the nonmovant for the purpose of modification." Thus, Roberts would have only been able to successfully register the original order in Kentucky if Kentucky had jurisdiction of Bedard at the time of registration. When the order was registered in 2008, Kentucky did not have personal jurisdiction over Bedard and, therefore, it does not meet the statutory proviso for registration pursuant to 28 U.S.C. § 1738B(i).

Roberts maintains that because the order was registered in 2008, the registration was still effective when Bedard was served in 2010. Her interpretation of the language of the statute, however, is flawed. Contrary to Roberts's assertion, the issue does not concern whether this order, as a foreign order, needs to be re-registered. If the order in 2008 had been registered when Kentucky had personal jurisdiction over Bedard, it would have been effective. But instead, the issue revolves around the federal directive in FFCCSOA that it must have been registered at a time when the state has personal jurisdiction over the obligor.

Here, the family court did not have personal jurisdiction over Bedard in 2008 when the order was registered. In fact, Roberts has never registered the order in a state with personal jurisdiction over Bedard. Therefore, Roberts's arguments that because the family court had personal jurisdiction in July 2010, it necessarily had subject-matter jurisdiction are not persuasive. Moreover, Roberts mistakenly frames the family court's decision concerning a lack of jurisdiction as based on a lack of personal jurisdiction over Bedard. That is incorrect. The Kentucky court determined that it did not have subject-matter jurisdiction.

The crux of the matter is that even though personal jurisdiction was acquired over Bedard in July 2010, the foreign order was not effectively registered in order to confer subject-matter jurisdiction. When Bedard was served, no registered order existed because the 2008 registration occurred when Kentucky did not have personal jurisdiction over him.

Since a court must have both personal and subject-matter jurisdiction to address modification of another state's child support orders, and the family court did not have subject-matter jurisdiction, it had to dismiss Roberts's motion. In fact, the family court did not have subject-matter jurisdiction under either federal or state law. To summarize, according to FFCCSOA, registration of the parties' Florida support order would only have been effective in Kentucky if Kentucky had personal jurisdiction over Bedard at the time of registration. Under Kentucky's UIFSA statutes, the family court would only have had subject-matter jurisdiction if Roberts had been a nonresident of Kentucky when she filed her motion to modify. Thus, the family court found that it does not have subject-matter jurisdiction, and we concur because, contrary to both federal and state law, Kentucky does not have the requisite subject-matter jurisdiction.

■ Furthermore, the necessity for personal jurisdiction must not be confused with the primacy for subject-matter jurisdiction. Personal jurisdiction is something the court may exercise whereas subject-matter jurisdiction is mandatory. *Nordike v. Nordike*, 231 S.W.3d 733 (Ky.2007).

■ Lastly, we do not think that FFCCSOA would preempt Kentucky's version of UIFSA. As explained in 18 American Law Reports (A.L.R.) 6th 97 (2006):

> The Full Faith and Credit for Child Support Orders Act (FFCCSOA), 428 U.S.C.A. § 1738B, was enacted by the United States Congress to facilitate enforcement of child support orders among the states, to discourage interstate controversies over child support, and to avoid jurisdictional competition and conflict among the states in the establishment of child support.

*Id.* The rationale is described:

> Each state is required, under the FFCCSOA, to enforce, according to its terms, a child support order made consistently with the Act by a court of another state, and the states are precluded from modifying such an order except in accordance with the Act.

*Id.* Turning to other jurisdictions, we note that in *Trissler,* it was held that FFCCSOA and UIFSA are "virtually identical." *Trissler v. Trissler,* 987 So.2d 209, 210 (Fla.App. 5 Dist.2008). And again, another state observed that the two statutes are to be viewed as complementary and duplicative, not contradictory. *Witowski v. Roosevelt,* 199 P.3d 1072, 1077 n. 2 (Wyo.2009); *see also LeTellier v. LeTellier,* 40 S.W.3d 490, 496–498 (Tenn.2001). Moreover, it has been held in a neighboring jurisdiction that the United States Congress did not intend FFCCSOA to preempt UIFSA. *Basileh v. Alghusain,* 912 N.E.2d 814, 820 (Ind.2009). Given that in the instant case we find no contradiction between Kentucky's UIFSA provisions and FFCCSOA, it is not necessary to make a determination regarding whether FFCCSOA preempts Kentucky UIFSA statute other than to observe that both federal and state law share a common objective—to maintain adequate and appropriate child support for the children.

The final issue presented by Roberts is whether the family court judge erred and should have struck Bedard's responsive motion because it was untimely under the local court rules. Roberts maintains that Bedard did not file a response to her July 7, 2010, motion to modify the child support order until August 4, 2010, which was two days prior to the hearing. Roberts mistakenly cites to local rules of Fayette Circuit Court to illustrate the untimely nature of Bedard's response. The relevant family court rule, however, states:

> Unless otherwise allowed by rule or statute, all motions to be heard on a docket must be filed with the Clerk and served on the parties no later than 72 hours prior to the noticed docket. Responses shall be filed with the Clerk and served on the parties no later than 24 hours prior to the noticed docket.

Rules of the Fayette Family Court (RFFC) 5(C)(1). Bedard's responsive motion to dismiss was filed on August 4, 2010, which met the 24–hour deadline in the pertinent rule. Here, the Fayette Family Court's decision to allow Bedard's response did not constitute an abuse of discretion.

## CONCLUSION

In sum, we concur with the Fayette Family Court that, while it may have had personal jurisdiction over Bedard in July 2010, it never had subject-matter jurisdiction under federal or state law to modify the Florida child support order. Furthermore, no abuse of discretion occurred when the family court allowed Bedard to file his responsive motion.

The order of the Fayette Family Court dismissing the motion to modify child sup-

port for lack of subject-matter jurisdiction under federal and state law is affirmed.

ALL CONCUR.